STATE OF NORTH CAROLINA v. KENNETH ODELL HUCKS AND GENERAL SAM MILLER

No. 542A86

(Filed 8 December 1988)

1. **Constitutional Law § 40— murder—guilty plea—second counsel not appointed —error per se**

    The trial court erred in a prosecution for first degree murder by accepting a guilty plea and conducting the sentencing hearing without appointing additional counsel in a timely manner pursuant to N.C.G.S. § 7A-450(b1) after defendant was charged with murder. N.C.G.S. § 7A-450(b1) is clearly mandatory and its mandate is directed to the trial court; when a trial court acts contrary to a statutory mandate, its error is not waived by defendant's failure to object at trial. The Supreme Court declined to engage in any kind of harmless error analysis.

2. **Criminal Law § 92— murder—charges against two defendants joined—one subsequent guilty plea—trial of one and sentencing of another with same jury—error**

    The trial court abused its discretion in a prosecution for first degree murder by denying defendant Hucks' motion to sever where Hucks and Miller were being jointly tried for the same capital offense; Miller changed his plea to guilty after the jury was impaneled; the court denied Hucks' renewed motion for severance; and the court proceeded with the jury simultaneously considering the sentencing of Miller and the guilt or innocence of Hucks. Hucks was entitled to have the evidence against him weighed objectively and attentively and to have his guilt or innocence determined beyond a reasonable doubt by a jury that was not distracted by the heavy burden imposed by our capital punishment statutes for Miller's benefit.

APPEALS of right by the defendants from judgments entered by *Bowen, J.,* at the 7 July 1986 Criminal Session of Superior Court for ROBESON County, sentencing defendant General Sam Miller to death and defendant Kenneth Odell Hucks to life imprisonment for murder in the first degree. Heard in the Supreme Court on 12 September 1988.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, and Staples S. Hughes, Assistant Appellate Defender, for the defendant appellant Miller.*

*Donald W. Bullard for the defendant appellant Hucks.*

MITCHELL, Justice.

The defendants were brought to trial upon proper indictments charging them with first degree murder and entered pleas of not guilty. The charges against the defendants were joined for trial over timely objections. After a jury was impaneled, the defendant General Sam Miller changed his plea to one of guilty as charged. Over the objection of the defendant Kenneth Odell Hucks, the proceeding in the trial court was thereafter conducted as a trial of Hucks on his plea of not guilty and as a simultaneous sentencing proceeding for Miller. The jury found Hucks guilty as charged. Neither Hucks nor the State presented any additional evidence during the subsequent sentencing proceeding against Hucks.

Miller testified on his own behalf for sentencing purposes after the verdict was returned against Hucks. The jury then recommended death for Miller and life imprisonment for Hucks, and judgments were entered accordingly by the trial court on 18 July 1986. The defendants appealed to this Court as of right.

As we conclude that reversible errors occurred in the trial court, each defendant must receive a new trial. Only a partial summary of the evidence presented in the trial court is necessary in light of the issues we find determinative on appeal.

The State's evidence tended to show that General Sam Miller came to North Carolina on or about 29 September 1985. Arriving in Fayetteville in a stolen automobile, he met Kenneth Odell Hucks, and the two became temporary partners in crime. On the afternoon of 5 October 1985, the defendants Miller and Hucks were traveling through Robeson County in the automobile stolen by Miller. Miller parked the car near a jewelry store owned and operated by Earl Allen in the town of St. Pauls. The defendants walked over to the store and began looking in the display window. A customer inside the store saw them looking in and also saw Hucks enter the store, stay momentarily, and then join Miller outside. The customer then left the store, but saw both defendants enter the store as she was driving away.

Allen had just spoken by telephone with his wife and was alone in the store when the defendants entered at around 3:45 p.m. Miller, armed with a .32-caliber pistol, demanded Allen's

money from the cash register. Allen refused Miller's demand, and Miller raised the pistol and fired a bullet into Allen's forehead. After Allen fell to the floor mortally wounded, Miller took more than $1,000 from Allen's pockets and the cash register, while Hucks stuffed hundreds of dollars worth of watches from a display case into paper bags. Allen died six days later from the gunshot wound to his brain, never regaining consciousness.

The defendants also were identified by two other witnesses who walked into the store just moments after the shooting and saw the defendants coming from behind a counter. Allen was found by these witnesses on the floor behind the counter. One of the witnesses then went after the defendants and saw them get in a car and drive away.

Miller was arrested early the next morning after he ran a roadblock and wrecked the car he was driving in an ensuing high-speed chase. Hucks was arrested after Miller assisted investigators in locating him. Each defendant still had proceeds of the jewelry store robbery in his possession when arrested.

### APPEAL OF MILLER

[1] Miller was initially charged with felonious assault and armed robbery. At his first appearance on those charges in District Court on 6 October 1985, he was found indigent and an attorney was appointed to represent him. That appointment was renewed after Miller was charged with first degree murder by a warrant issued on 11 October 1985, after Allen's death. Miller never received nor requested the appointment of additional counsel to assist him in this capital case.

On appeal, Miller assigns as error the failure to appoint additional counsel on his behalf in a timely manner. We agree that allowing the capital case against Miller to proceed without the appointment of additional counsel to assist him violated the mandate of N.C.G.S. § 7A-450(b1). This denial of Miller's statutory right to additional counsel was prejudicial error per se. Therefore, his plea of guilty must be stricken, the verdict and judgment against him vacated and a new trial held.

N.C.G.S. § 7A-450(b1), applicable to indictments returned on or after 11 July 1985, provides in pertinent part: "An indigent person indicted for murder may not be tried where the State is

seeking the death penalty without an assistant counsel being appointed in a timely manner." The indigent defendant Miller was indicted on 10 March 1986 for first degree murder and brought to trial on 8 July 1986. A jury was impaneled, the defendant entered a guilty plea and a sentencing proceeding resulting in a sentence of death was held, all without the appointment of assistant counsel. Such critical stages of a capital prosecution certainly fall within the statute's mandate that an indigent cannot be tried for his life without timely appointment of assistant counsel.

The statute gives a right to assistant counsel which is not to be confused with the fundamental right of criminal defendants to effective assistance of counsel guaranteed by our state and federal constitutions. On its face, the statute provides a right to counsel in addition to constitutional requirements, and reflects a special concern for the adequacy of legal services received by indicted indigents who face the possibility of the death penalty. There is no reason to believe, however, that the statute embodies such a different and limited notion of assistance of counsel that it would not apply to all of the post-indictment critical stages of a criminal prosecution to which the more basic and limited constitutional right to effective assistance applies.

Any reasonable notion of timely assistance of counsel must recognize that a criminal defendant's case can be won or lost before trial. The State's interest in a fair, adequate and error-free criminal process also attaches well before the actual trial. The defendant's counsel, whether one or the two which the General Assembly has seen fit to require for indigent defendants in capital cases, must have a reasonable amount of time in which to investigate and prepare a defense. *See State v. Cobb*, 295 N.C. 1, 243 S.E. 2d 759 (1978). N.C.G.S. § 7A-450(b1) therefore mandates appointment of assistant counsel "in a timely manner" which ensures under the particular circumstances of a case that both attorneys representing the indigent defendant have time to effectively prepare for trial. In most cases, that mandate would require appointment of assistant counsel as soon as practicable after indictment of the indigent defendant on a capital charge.

The trial transcript and record on appeal in this case reveal no discussions of N.C.G.S. § 7A-450(b1) and are devoid of any request for assistant counsel by the defendant or offer by the trial

court to appoint assistant counsel. While possible explanations for those omissions are not at issue, we note that subsection (b1) of the statute was still relatively new when this case arose and that prior to its effective date questions concerning the appointment of additional counsel generally arose upon a motion by the defendant and were within the trial court's discretion. Moreover, subsection (b1) of the statute, as previously discussed, does not expressly indicate when the trial court's duty to appoint assistant counsel arises.

The State in this case contends that the absence of any discussion relating to the appointment of assistant counsel amounts to the defendant's waiver of the statutory mandate by failure to assert it at trial. The State, in its brief, equates the mandate of N.C.G.S. § 7A-450(b1) with statutory rights which have been held waived when not asserted by defendants at trial, including the right to a polling of the jury, N.C.G.S. § 15A-1238, to joinder, N.C.G.S. § 15A-926, and to discovery, N.C.G.S. § 15A-902 and § 15A-903. Those statutes, however, are easily distinguished from N.C.G.S. § 7A-450(b1), because they expressly require a motion by the defendant before he is entitled to the rights they guarantee. There is no such requirement contained in the language of N.C.G.S. § 7A-450(b1).

Nor is this case controlled by *State v. Tindall*, 294 N.C. 689, 242 S.E. 2d 806 (1978), cited by the State, in which we held that a trial court has no obligation to assist a defendant when he has attempted to use the wrong statutory procedure for compelling the attendance of out-of-state witnesses. Unlike the mandatory appointment of assistant counsel in this case, the procurement of witnesses is clearly an area where the trial court has no reason to act until it is prompted to do so by the litigants.

The statutory mandate at issue in this case also does not come under the broadly stated rule found in *State v. McDowell*, 301 N.C. 279, 271 S.E. 2d 286 (1980), *cert. denied*, 450 U.S. 1025, *reh'g denied*, 451 U.S. 1012 (1981), where we held that the defendant had waived his right to make an opening statement to the jury by not raising the issue at trial, even though N.C.G.S. § 15A-1221(a)(4) provided that a defendant "must be given the opportunity" to make such a statement. In that case we stated:

It is well established that a defendant may waive the benefit of statutory or constitutional provisions by express consent, failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it. . . . It follows that in order for an appellant to assert a constitutional or statutory right on appeal, the right must have been asserted and the issue raised before the trial court. . . . In addition, it must affirmatively appear on the record that the issue was passed upon by the trial court.

301 N.C. at 291, 271 S.E. 2d at 294 (citations omitted).

*McDowell* is distinguishable from the present case. Unlike the mandate contained in the statute before us in this case, the terms of the statute in *McDowell* required only an "opportunity" for a defendant to make an opening statement to the jury and, thereby, made an opening statement an option to be chosen or rejected by the defendant. It remained the defendant's responsibility to decide whether to make an opening statement. There was no mandate in that statute that a defendant "may not be tried" without an opening statement.

In contrast, N.C.G.S. § 7A-450(b1) is clearly mandatory, and its mandate is directed to the trial court. It states simply but unequivocally that an indigent facing a possible death penalty may not be tried unless an assistant counsel has been appointed in a timely manner. The statute requires the trial court to appoint assistant counsel as a matter of course when an indigent is to be prosecuted in a capital case. It neither expressly nor impliedly places any responsibility on the defendant to ask for assistant counsel.

When a trial court acts contrary to a statutory *mandate*, the error ordinarily is not waived by the defendant's failure to object at trial. *State v. Ashe*, 314 N.C. 28, 331 S.E. 2d 652 (1985). We also have recognized that a trial court sometimes has a duty to act *sua sponte* to avoid statutory violations; for example, the trial court must exclude evidence rendered incompetent by statute, even in the absence of an objection by the defendant. *State v. McCall*, 289 N.C. 570, 223 S.E. 2d 334 (1976). In so holding, we have viewed such mandatory statutes as legislative enactments of public policy which require the trial court to act, even without a request to do

so, much like the public policy favoring fair and error-free capital trials which is served by N.C.G.S. § 7A-450(b1).

We have said in *McDowell* and elsewhere, however, that any right, constitutional or otherwise, can be waived if the waiver is made knowingly and intelligently. A defendant must be allowed under the Sixth Amendment to reject representation by counsel, *Faretta v. California*, 422 U.S. 806, 45 L.Ed. 2d 562 (1975), and also to refuse the benefit of assistant counsel provided for by N.C.G.S. § 7A-450(b1). However, there was no such refusal here.

The State would have us infer waiver in the present case from the defendant's silence. Given the mandatory nature of the statute and the public policy it serves, we can find no prerequisite duty of the indigent defendant to request assistant counsel in this capital case and cannot infer waiver of the requirement of assistant counsel from the defendant's silence.

The State next contends that even if the mandate of the statute was violated, the error could not have been prejudicial and, therefore, a new trial is not required. We decline to engage in any kind of harmless error analysis under N.C.G.S. § 15A-1443(a) or § 15A-1443(b) in this case. We can only guess what difference a second attorney might have made to this defendant in the preparation of his defense, in his decision as to whether to change his plea to guilty and in the level of representation he received before the trial court. We are especially reluctant to engage in such speculation where, as here, the legislature has chosen to remove that question from the discretion of the courts, changing well established prior practice.

This appeal presents a problem similar to that which this Court faced in a series of cases culminating in the rule last explained in *State v. Mitchell*, 321 N.C. 650, 365 S.E. 2d 554 (1988). In those cases, it was held that a trial court's refusal to allow all of a defendant's attorneys to participate in final arguments to the jury violated N.C.G.S. § 84-14, deprived the defendant of a substantial right, and resulted in potential prejudice which was beyond adequate measurement. We indicated that we could only have speculated as to what effect arguments by additional attorneys might have had, and we declined to do so. We concluded that the reasons against such speculation were common to all cases where the capital defendant had been deprived of his sub-

stantial legal right to have all of his counsel address the jury and held that such error constituted "prejudicial error per se." 321 N.C. at 659, 365 S.E. 2d at 559. In this case, where the defendant was deprived of his substantial legal right to assistant counsel not only during closing arguments but at all stages of the capital prosecution, our speculation would be even more unreliable than that which we refused to undertake in *Mitchell.*

For the foregoing reasons, we conclude that the failure to appoint additional counsel for the defendant Miller in a timely manner violated the mandate of N.C.G.S. § 7A-450(b1) and was prejudicial error per se. The trial court erred in accepting Miller's guilty plea and in conducting the sentencing proceeding against him, as the defendant had been denied the level of assistance of counsel required by the statute. Therefore, Miller's guilty plea must be stricken, the judgment sentencing him to death vacated and his case remanded for a new trial.

## APPEAL OF HUCKS

[2] The first degree murder charges against Hucks and Miller were joined for trial upon the prosecutor's motion pursuant to N.C.G.S. § 15A-926. Hucks objected and made a timely motion for severance, which was denied. After the jury was impaneled and Miller was permitted to change his plea from not guilty to guilty, with the jury removed from the courtroom, Hucks again moved for severance and a mistrial. Those motions were denied.

Hucks also objected to informing the jury of Miller's guilty plea, while Miller and the prosecutor insisted that the jury had to be so instructed if the cases against the defendants were to be considered simultaneously by the jury as a sentencing proceeding against Miller and a trial to determine the guilt or innocence of Hucks. Hucks continued to request severance and argued that he could not receive a fair trial from such a proceeding. The trial then proceeded after the trial court instructed the jury that Miller had entered a plea of guilty to the first degree murder for which both defendants were charged and that the jury was to simultaneously consider the evidence to be introduced as weighing upon both the appropriateness of death or life imprisonment for Miller and upon the issue of the guilt or innocence of Hucks.

On appeal, Hucks argues that failure to sever after Miller entered his guilty plea so tainted the proceedings against Hucks that a fair trial became impossible. We agree.

The initial joinder of Miller and Hucks for trial was proper under N.C.G.S. § 15A-926(b)(2)(a), which provides for such joinder upon motion of the prosecutor "[w]hen each of the defendants is charged with accountability for each offense." The joinder in this case complied with that statute, as each of the defendants was charged with the first degree murder of Allen. Moreover, public policy and concern for efficient administration of justice compel joinder under such circumstances as the rule rather than the exception. *State v. Belton*, 318 N.C. 141, 347 S.E. 2d 755 (1986).

N.C.G.S. § 15A-927(c)(2), however, requires the trial court, upon motion, to grant a severance of defendants when necessary to promote a fair determination of the guilt or innocence of one or more defendants. No matter how strong the public policy interests in joinder, they cannot stand in the way of a fair determination of guilt or innocence. *State v. Boykin*, 307 N.C. 87, 296 S.E. 2d 258 (1982).

The trial court's decision as to whether to grant a motion for severance under the statute is an exercise of discretion, and its ruling will not be disturbed on appeal unless the defendant demonstrates an abuse of discretion which effectively deprived him of a fair trial. *State v. Lake*, 305 N.C. 143, 286 S.E. 2d 541 (1982). On the peculiar facts presented by this appeal, we must conclude that such an abuse occurred.

When Miller changed his plea from not guilty to guilty after the jury had been impaneled, the trial court was presented with a novel dilemma not resolved by our statutes. A jury had already been impaneled for the trial and sentencing of both defendants for the same murder, and most of the State's evidence would be the same as to both defendants. Severing the cases against the two defendants at that point would have required essentially two duplicate proceedings, at considerable expense of judicial resources and public inconvenience.

The trial court's dilemma was not resolved by N.C.G.S. § 15A-2000 or § 15A-2001. While N.C.G.S. § 15A-2000(a)(2) provides that "[i]f the defendant pleads guilty, the sentencing pro-

ceeding shall be conducted before a jury *impaneled for that purpose*," (emphasis added) that language does not require the impaneling of a new jury for sentencing purposes when a defendant pleads guilty after a jury has been impaneled to pass upon his guilt or innocence. Nor was that the intent of the separate provisions of N.C.G.S. § 15A-2001 for guilty pleas and impaneling juries for the purpose of sentencing in capital cases. The mere fact that a defendant pleads guilty after a jury has been impaneled to determine his guilt or innocence in a capital case does not, standing alone, make it error for the same jury to be used for the sentencing proceeding against him.

Here, the trial court attempted to conserve judicial resources by using one jury while simultaneously conducting the sentencing proceeding against Miller and the trial of Hucks on his plea of not guilty. The trial court attempted to overcome any prejudice to Hucks arising from Miller's guilty plea by giving the following instruction to the jury:

> Members of the jury, you will not allow the development in the case of State versus General Sam Miller to affect you in any way in your deliberation and your determination of the case between the State and Kenneth Odell Hucks.

Given the unique situation involved, however, the trial court's instruction was inadequate to guarantee that Hucks would receive a fair determination of his guilt or innocence by an unbiased and adequately attentive jury.

An instruction similar to that given by the trial court is appropriate in a non-capital joint criminal trial when one defendant pleads guilty. Under those circumstances, however, the case against the co-defendant pleading guilty will be *entirely* removed from the consideration of the jury without informing the jury of the guilty plea, since the jury has no function in sentencing in non-capital cases. *See N.C.P.I.*, Criminal, 101.41 (1979). Here, however, two defendants were being jointly tried for their lives for the same murder, and the jury was told at the outset that Hucks' co-defendant had entered a plea of guilty. The jury was then required to determine whether one admittedly guilty co-defendant should live or die and, on the same evidence, simultaneously determine the guilt or innocence of the other. Such a

proceeding was hopelessly tainted against Hucks who had entered a plea of not guilty and maintained his innocence.

Hucks was entitled to have the evidence against him weighed objectively and attentively and to have his guilt or innocence determined beyond a reasonable doubt by a jury that was not distracted by the heavy burden imposed by our capital punishment statutes for Miller's benefit. The uniqueness of the jury's life-or-death function in a capital sentencing proceeding has led to the requirement that the trial court conduct "a *separate* sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment." N.C.G.S. § 15A-2000(a)(1) (1983) (emphasis added). We have recognized that such a proceeding places upon the jury the heavy responsibility of subjectively assessing the appropriateness of imposing the death penalty upon a particular defendant for a particular crime. *State v. Goodman*, 298 N.C. 1, 34, 257 S.E. 2d 569, 590 (1979).

Due to the unique and distinct factors the jury was required to consider as to each co-defendant, it could not adequately fulfill its duties to both of them in the simultaneous proceedings. The cases against the defendants should have been severed, with one of the cases removed from the concern of the jury, and another jury impaneled for either Miller's sentencing or Hucks' trial.

We conclude that since the defendants were being jointly tried for the same capital offense when Miller changed his plea to guilty, the trial could not continue as both a sentencing proceeding as to Miller and as a trial to determine the guilt or innocence of Hucks. Therefore, on these peculiar facts, we conclude that the trial court abused its discretion by denying Hucks' motion to sever made after Miller changed his plea to guilty. Since we have concluded for the foregoing reasons that the trial court's actions in failing to sever after Miller's guilty plea and in informing the jury of that plea denied Hucks his opportunity for a fair determination of his guilt or innocence by an unbiased jury, Hucks must receive a new trial.

Each defendant has raised additional issues on appeal. Because the issues we have previously decided herein are dispositive, it is unnecessary to address those additional issues.

For the foregoing reasons, each defendant must receive a new trial.

New trial.