STATE v. DAVIS

[168 N.C. App. 321 (2005)]

———————————

STATE OF NORTH CAROLINA v. BRANDON BUFORD DAVIS

No. COA03-1718

(Filed 1 February 2005)

**1. Constitutional Law— right to counsel—indigent defendant—retained counsel—court appointment of assistant counsel**

The trial court erred in a first-degree murder case by failing to appoint assistant counsel to defendant's privately retained counsel under N.C.G.S. § 7A-450(b1) where defendant was otherwise indigent and the State was seeking the death penalty, because: (1) our Supreme Court has already assumed that when

STATE v. DAVIS

[168 N.C. App. 321 (2005)]

a defendant has retained one counsel in a capital case, he still may be entitled to an appointed assistant counsel if he is otherwise indigent; (2) N.C.G.S. § 7A-450 provides that retaining counsel does not itself remove a defendant's indigent status where necessary expenses cannot be met; and (3) assistant counsel which cannot be retained falls within a necessary expense of a capital defense which the State must provide or defendant must waive.

**2. Evidence— prior crimes or bad acts—prior arrest—drug possession**

The trial court did not err in a first-degree murder case by admitting evidence of defendant's prior arrest on the evening before the alleged murder where defendant was found with 18 grams of cocaine, approximately $2,600, and a bag of marijuana, because: (1) defendant's prior arrest for drug possession was admissible under the theory that it went to the motive for the later drug-related murder; and (2) defendant did not object under N.C.G.S. § 8C-1, Rule 403, nor has defendant argued such in his brief.

Appeal by defendant from judgment entered 14 August 2002 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 15 November 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Alexander McC. Peters, for the State.*

*Daniel Shatz for defendant appellant.*

McCULLOUGH, Judge.

Defendant appeals from the trial court's judgment having been found guilty of first-degree murder, and sentenced to life imprisonment without parole. The State's evidence tended to show the following: On 1 February 2001, around 5:15 p.m., Officer Wilde of the Greensboro Police Department (GPD) pulled over a vehicle for tag violations. Defendant, a passenger, fled the vehicle when it came to a stop. Officer Wilde apprehended defendant about 200 meters away. From defendant's person, he retrieved $2,641.68, 18 grams of crack cocaine, and a bag of marijuana. Defendant was arrested and put in jail.

Raymond Hampton ("Mr. Hampton") and Kevin Shepard ("Mr. Shepard") bailed defendant out of jail that same evening. They went

STATE v. DAVIS

[168 N.C. App. 321 (2005)]

back to Mr. Hampton's apartment and watched the end of the Duke-North Carolina basketball game. Soon thereafter, Reggie Little ("Mr. Little") and Michael Murphy ("Mr. Murphy") arrived at the apartment driving a Kia jeep. At the apartment, defendant used both Mr. Hampton's and Mr. Shepard's phones. Mr. Murphy observed defendant on Mr. Shepard's phone arguing with someone. Nearing midnight, defendant asked if he could get a ride with Mr. Little and Mr. Murphy. They drove defendant to his mother's house where he went inside for a few minutes, returned, and they left. Defendant then asked Mr. Little to take him to meet someone off of High Point Road, instructing him to park next to some apartments. Saying he was going to meet with a friend, defendant got out and walked towards the apartments. During the 15 or 20 minutes Mr. Little and Mr. Murphy were waiting in the vehicle, they heard what sounded like gunshots. Soon after, defendant returned stating, "I did that Dude," or, "Yo, I done that kid." Defendant went on to say "he didn't do it for nothing," revealing a little package of what appeared to be cocaine. Mr. Murphy also saw that defendant was carrying a gun.

Defendant was then dropped off at his girlfriend Teksha Cummings' ("Ms. Cummings") place sometime after 1:00 a.m. Ms. Cummings observed that defendant was acting scared when he arrived, and that he possessed drugs and a handgun.

Around midnight on 2 February 2001, James Moore ("Mr. Moore") of Cedar Forks Apartments ("Cedar Forks") heard loud sounds. Going outside to investigate, he saw a dark-colored minivan with flashing lights in the parking lot. He approached the van and saw a man slumped over in the driver's seat, not moving and non-responsive. He could see glass on the ground and bullet holes in the next car, and realized the man was dead. Lavonda Donnell ("Ms. Donnell") and her sister Tonya Fennell ("Ms. Fennell"), also residents of Cedar Forks, saw from their respective apartment windows a black male dressed in a white T-shirt and dark pants in the parking lot using a white towel to wipe off the passenger-side door of a van with its lights blinking. The man then ran away with a white object in his hand. Within minutes, some residents of Cedar Forks building 2006 heard a car door slam and a car speed off from behind their building.

The victim, shot eleven times, was identified by GPD as Francisco Solis ("Mr. Solis"). Evidence collected at the scene included: 11 9-mm bullets and shell casings, glass fragments, Mr. Solis's cell phone, $657, 16.1 grams of crack cocaine, and some methamphetamine in Mr. Solis's rear pocket.

Detective Rankin of the GPD was the lead investigator. He collected Mr. Solis's cell phone and obtained court orders to get subscriber information which ultimately showed Mr. Solis had received calls from Mr. Hampton, Mr. Shepard, and defendant, and that Mr. Solis had called defendant's phone on previous days. These records led police to question Mr. Murphy and Mr. Little regarding their involvement with defendant on the night in question. Little was able to show the detective the street where defendant instructed them to stop, an area directly behind building 2006 of Cedar Forks where several witnesses heard car tires spinning minutes after hearing the gunshots.

K-9 Officer Davis used his dog Bear to track the suspect's trail from the Cedar Forks parking lot. Bear picked up the trail in front of building 2006, and followed it to the street behind the apartment complex where he then lost it. Officer Davis opined that this suggested a vehicle was involved.

State Bureau of Investigation (SBI) Agent Jones, a firearms expert, examined the 9-mm bullet shell casings collected by GPD from the crime scene and Mr. Solis's body, and determined that all of them had been fired by the same gun, most likely a semiautomatic handgun fired at very close range. No gun was submitted for analysis.

Defendant was arrested for the shooting of Mr. Solis on 22 February 2001 at the Extended Stay Hotel.

Defendant's evidence tended to show the following: defendant did not live with his mother, Celia Davis ("Ms. Davis"). Ms. Davis's late husband had kept a handgun in the house and owned hunting guns. These had all been given to her brother and a friend of her husband when he passed away, and the 9-mm rifle rounds found during the GPD search of her home probably belonged to her husband.

Janet Harris, a notary public and wife of the defendant's trial counsel, testified to preparing and notarizing sworn statements of Mr. Murphy and Mr. Little. Both men voluntarily came to defendant's lawyer's office. In Mr. Murphy's affidavit of 27 November 2001, he denied seeing defendant with a gun or hearing the gunshots on the night of the shooting. He also denied hearing defendant brag about the shooting. In Little's affidavit of 3 December 2001, he also denied hearing gunshots while they waited for defendant in the car.

Based upon the above evidence, the jury found defendant guilty of first-degree felony murder, with the underlying felony being armed

robbery. Defendant contends the trial court made four errors: first, by denying defendant's motion to dismiss at the close of all evidence; second, by denying defendant's counsel's petition for appointment of assistant counsel; third, by denying defendant's petition for exculpatory evidence; and fourth, by allowing the State to present evidence that defendant had been arrested on the evening preceding the murder in possession of drugs. Because we grant defendant a new trial on the basis that the court erred in denying his request for an assistant counsel, we address only that issue and those that may recur at any new trial.

## I. Appointment of Assistant Counsel

[1] Defendant contends the trial court erred in failing to appoint assistant counsel to defendant's retained counsel, where defendant was otherwise indigent and the State was seeking the death penalty. We agree.

For purposes of court appointment of counsel, an "indigent" defendant is one "who is financially unable to secure legal representation and to provide all other necessary expenses of representation in an action or proceeding enumerated in this Subchapter." N.C. Gen. Stat. § 7A-450(a) (2003). When a defendant is determined by the court to be indigent and entitled to counsel, "it is the responsibility of the State to provide him with Counsel and the other necessary expenses of representation." N.C. Gen. Stat. § 7A-450(b). "An indigent person indicted for murder may not be tried where the State is seeking the death penalty without an assistant counsel being appointed in a timely manner." N.C. Gen. Stat. § 7A-450(b1). Unless specifically waived, the court must *sua sponte* appoint an indigent capital defendant an assistant counsel. *State v. Hucks*, 323 N.C. 574, 581, 374 S.E.2d 240, 245 (1988). Failure by defendant to move for assistance does not constitute a waiver; and failure by the court to appoint assistant counsel in a timely manner is *per se* prejudicial error. *Id.* at 579, 374 S.E.2d at 274. Counsel can be reassessed at any stage of the criminal proceedings, and where a defendant no longer is of indigent status, it must be made known to the court. N.C. Gen. Stat. § 7A-450(c) and (d).

On 9 October 2001, the State gave notice of its intent to seek the death penalty against defendant. On the following day, the trial court found that defendant was not financially able to provide the necessary legal expenses of legal representation, and therefore was indigent and entitled to services as contemplated by law. Later, in a 7 May 2002 order denying defendant's petition for an assistant counsel pur-

suant to N.C. Gen. Stat. § 7A-450(b1), the trial court found that defendant had accepted services from a privately retained attorney, and therefore was no longer indigent and his retained counsel could not be appointed assistant counsel. In denying defendant assistant counsel, the court cited *State v. Richardson*, 342 N.C. 772, 467 S.E.2d 685, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996).

In *Richardson*, relied on by the State, the defendant assigned as error the court's refusal to change the status of defendant's two privately retained attorneys to that of appointed indigent counsel. Defendant argued that the trial court's failure to switch counsels' status, while otherwise providing funds for an investigator and experts as "necessary expenses," required reversal of defendant's conviction. *Richardson*, 342 N.C. at 780, 467 S.E.2d at 689-90. Our Supreme Court did not agree, stating:

> Once defendant accepted the services of properly retained counsel and consented to the withdrawal of appointed counsel, he was no longer indigent within the meaning of 7A-450(a). His retained counsel's general notice of appearance pursuant to 15A-143 meant that [defendant's two counsel] were required to represent him in the case through the "entry of final judgment." [Defendant's two counsel] themselves acknowledged that they were "in the case whether . . . compensated or not, and we understand that," and never moved to withdraw from the case. [Defendant's two counsel] continued their zealous representation of defendant throughout the case despite the possibility that their hard work would go uncompensated.

*Id.* at 781, 467 S.E.2d 690. Thus, at all times that defendant was being tried capitally, he was represented by two counsel and could not be considered indigent unless his counsel withdrew. *Id.*

The Court in *Richardson* cited *State v. McDowell*, 329 N.C. 363, 407 S.E.2d 200 (1991). In *McDowell*, also relied on by the State, the defendant was denied assistant counsel based upon the following:

> [D]efendant was found indigent by the trial court . . . and was subsequently represented by court-appointed counsel . . . . However . . . defendant had obtained private counsel . . . retained by members of his family, and [appointed counsel] had been allowed to withdraw . . . . During the pretrial proceeding, defendant *explicitly accepted* attorney Oates as his counsel of his own choosing. We hold that from this point on in the pretrial proceed-

**STATE v. DAVIS**

[168 N.C. App. 321 (2005)]

ing, defendant was not an indigent within the meaning of N.C.G.S. § 7A-450(a), as he had, through his family, secured private representation and therefore was not entitled to the appointment of assistant counsel.

*McDowell*, 329 N.C. at 373, 407 S.E.2d at 206 (emphasis added). From the appointment hearing of counsel retained by the family for the defendant in *McDowell*, our Supreme Court excerpted the following colloquy:

> COURT: Let me ask the defendant, Mr. McDowell. Mr. McDowell, *is Mr. Oates seated with you at the table your attorney in the trial of this case?*
>
> MR. McDOWELL: *Yes, sir.*
>
> COURT: Are you satisfied with him? The State's attorney indicated that your family retained Mr. Oates and *you consider him retained for you and you accept him as your lawyer?*
>
> MR. McDOWELL: *Yes, I do.*
>
> COURT: Thank you.
>
> [STATE]: Your Honor, I think he probably is otherwise indigent because of his situation and I take it by this that he is waiving any additional counsel because of his indigent status and Mr. Oates is his counsel of record.
>
> [COURT]: Do you understand, Mr. McDowell, and I will ask you the same question. You may be indigent and cannot afford a lawyer yourself. *Mr. Oates is your attorney and he is retained by your family to represent you[,] that you waive any other rights that you may have to an additional court appointed lawyer and you accept Mr. Oates as your attorney, is that correct?*
>
> MR. McDOWELL: *Yes, sir.*

*Id.* at 372-73, 407 S.E.2d at 205 (emphasis original).

Rebutting the State's assertion that *Richardson* and *McDowell* are controlling, defendant argues these cases are distinguishable from the facts of those at bar. Specifically, defendant contends that unlike *Richardson*, at no point was defendant represented by two counsel during the defense of his capital charge; and unlike *McDowell*, defendant never specifically waived his right to assistant counsel.

Defendant asserts that *State v. Locklear*, 322 N.C. 349, 368 S.E.2d 377 (1988) is the proper case through which to address his assignment of error. In *Locklear*, a capital defendant's retained counsel moved for appointment of assistant counsel pursuant to N.C. Gen. Stat. § 7A-450(b1). After being appointed assistant counsel, the defendant sought a continuance so that assistant counsel could become familiar with the case. The denial of this continuance was the defendant's basis for error. Rather than holding that the defendant did not have the right to assistant counsel in the first place, our Supreme Court found no error because neither the "statutory" entitled assistant counsel or the retained counsel seemed inadequately prepared to argue relevant motions in the case. *Locklear*, 322 N.C. at 357, 368 S.E.2d at 382. Defendant contends the Court in *Locklear* assumed the propriety of appointing assistant counsel on its facts, and thus we should specifically do so in the case at bar. To rebut, the State argues that the discussion in *Locklear* does not address defendant's case because the retained counsel in *Locklear* only gave "Notice of Limited Representation," and that it is when a general appearance is made by an attorney that the defendant no longer is indigent for purposes of N.C. Gen. Stat. § 7A-450(b1). *Id.* at 356, 368 S.E.2d at 382.

We agree with defendant that *Richardson* and *McDowell* do not govern the facts concerning defendant's request for appointed assistant counsel. In *Richardson*, the Court focused on the fact that at all times, the capital defendant was represented by two counsel. In *McDowell*, the Court emphasized that the capital defendant, with one retained counsel, clearly and unequivocally waived appointment of an assistant attorney where the trial court, by its questioning indicated it was within the defendant's rights to request one. We read *Locklear* to be the closest case factually on point, and a case where our Supreme Court clearly assumed appointment of an assistant attorney on such facts was proper. In *Locklear*, despite giving the court a "Notice of Limited Representation," defendant's attorney stated that she would represent the defendant for "[a]ll further Superior Court Proceedings". *Locklear*, 322 N.C. at 357, 368 S.E.2d at 382. Thus, it was made clear to the court that she would provide representation until final judgment was rendered in the trial stage in superior court. *See* N.C. Gen. Stat. § 15A-143 (2003) (An attorney undertakes to represent a defendant "at all subsequent stages of the case until entry of final judgment, at the trial stage" when making a general entry.). Despite having a retained counsel make what was in fact a general entry, the defendant was still appointed assistant coun-

sel. *Locklear*, 322 N.C. at 357, 368 S.E.2d at 382. It is evident that our Supreme Court assumed, upon facts which are akin to those at bar, that when a defendant has retained one counsel in a capital case, he still may be entitled to an appointed assistant counsel if he is otherwise indigent.

We find authority in the N.C. Gen. Stat. § 7A-450 definition of "indigency" and the statute's subsequent safeguards for indigent capital defendants for requiring appointment of an assistant counsel to defendants similarly situated to those in *Locklear* and the case at bar. The section defines a defendant as indigent if he cannot afford legal counsel "*and to provide all other necessary expenses of representation.*" N.C. Gen. Stat. § 7A-450(a) (emphasis added). The plain language of the statute is clear that retaining counsel does not itself remove a defendant's indigent status where necessary expenses cannot be met. The statute guarantees indigent capital defendants two counsel, and assumes the representation will be the same as if the two appointed counsel were privately retained counsel. N.C. Gen. Stat. § 7A-450(b) & (b1). The statute reflects due regard for the gravity of a capital charge and its potential for many exhaustive procedural overlays and dire ramifications. It stands to reason that, if a defendant were able to procure funds sufficient for only one attorney his defense would be severely handicapped by denying appointment of assistant counsel. Therefore, we hold that assistant counsel which cannot be retained falls within a "necessary expense" of a capital defense which the State must provide or the defendant must waive. *See McDowell*, 329 N.C. 372-73, 407 S.E.2d at 205.

The principle behind our holding has been applied where our Supreme Court has held that hiring a single counsel does not itself remove a defendant's indigent status, and "does not in itself foreclose defendant's access to state funds for other necessary expenses of representation—including expert witnesses." *See State v. Boyd*, 332 N.C. 101, 109, 418 S.E.2d 471, 475 (1992). The *Richardson* Court distinguished *Boyd* on facts very different from those in the case at bar. In *Richardson*, two attorneys had made general appearances for defendant and neither sought to withdraw their representation. *Richardson*, 342 N.C. at 782, 467 S.E.2d at 690-91. Thus, the defendant's capital defense was provided all the safeguards and necessary expenses contemplated in N.C. Gen. Stat. § 7A-450, and whether or not the representation and its necessary expenses were being paid for by the State, the defendant, or no one at all, there was no error as to the adequacy of the defense itself for purposes of reversal.

Lastly, common sense militates a reading of N.C. Gen. Stat. § 7A-450(b1) as affording assistant counsel to a capital defendant as a "necessary expense" where the defendant is, beyond a single retained counsel paid for by himself or another source, otherwise indigent. Because denying a defendant assistant counsel in such an instance would handicap his defense, a defendant would be better off never having sought or accepted any retained counsel. Moreover, were we to read N.C. Gen. Stat. § 7A-450 as narrowly as the State, the most likely outcome would be that indigent capital defendants would refuse retained counsel when offered by some outside source for fear of losing the statutory right of an assistant counsel. The result of this outcome would be an unnecessary drain on State funds and directly contrary to our Supreme Court's declaration of the policy behind N.C. Gen. Stat. § 7A-450. *See State v. Hoffman*, 281 N.C. 727, 738, 190 S.E.2d 842, 850 (1972) (stating that N.C. Gen. Stat. § 7A-450 "clearly manifest[s] the legislative intent that every defendant in a criminal case, to the limit of his ability to do so, shall pay the cost of his defense. It is not the public policy of this State to subsidize any portion of a defendant's defense which he himself can pay.").

In the case at bar, defendant, otherwise indigent, was afforded counsel by his family. The retained counsel, presumably overwhelmed by what is involved in defending a capital case and its obvious potential ramifications, sought the necessary expense of an assistant counsel to provide an adequate defense. The court denied defendant this necessary expense. We believe this was error *per se*, and in violation of N.C. Gen. Stat. § 7A-450. We hereby reverse on that ground, and grant defendant a new trial. *Hucks*, 323 N.C. at 581, 374 S.E.2d at 245.

## II. Issues that May Recur at Any New Trial[1]

[2] Defendant contends the trial court erred in admitting evidence of defendant's prior arrest on the evening before the alleged murder where defendant was found with 18 grams of cocaine, approximately $2,600.00, and a bag of marijuana. We do not agree the trial court erred, and find this evidence may be admissible at any new trial.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003) permits the trial court to admit evidence of "other crimes, wrongs, or acts," where the evi-

---

1. We note that defendant's assignment of error concerning the trial court's denial of his motion for exculpatory evidence is now moot. In the motion, defendant sought the identity of the victim's girlfriend who had made a statement to the GPD. As revealed in defendant's brief, her identity has since been determined.

dence is offered for the exclusive purpose of "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." However, evidence of these other acts is not admissible in an attempt to prove the general criminal propensities or disposition of a defendant. *Id.* Generally, this rule is one of inclusion of relevant evidence, so long as its probative value serves more than to show this criminal propensity or disposition. *State v. Coffey*, 326 N.C. 268, 280, 389 S.E.2d 48, 55 (1990).

In *State v. Ligon*, 332 N.C. 224, 234, 420 S.E.2d 136, 142 (1992) our Supreme Court allowed evidence of a defendant's prior history of drug dealing to show "motive" where the defendant was alleged to have murdered the victim after a drug transaction. The evidence of the defendant as a drug dealer was not limited to the circumstances of the specific transaction from which the murder arose. The State was allowed to admit evidence of prior weekly drug transactions in which the defendant was involved, earning $1,000.00 per week. *Id.* After the shooting in the case, a witness testified that the defendant stated: "That will teach people not to rip Burton Street off." *Id.*

In the case at bar, the court admitted defendant's prior arrest to show "motive" based on the State's forecast evidence that after hearing gunshots from the alleged incident, Mr. Murphy and Mr. Little observed defendant return to the car where they were waiting, and stated: "I did that Dude" or "Yo, I done that kid." Evidence was forecast that defendant stated "he didn't do it for nothing," and then showed Mr. Murphy and Mr. Little a small package of what appeared to be cocaine. Additionally, the State later introduced circumstantial evidence that defendant called the victim immediately after getting out of jail, and immediately before going to the apartment complex where the victim was killed. Both when the evidence was tendered, and before the jury's deliberations, the trial court gave instructions to the jury limiting the use of this evidence exclusively for discerning a "motive" to the crime at issue.

Credibility of the evidence notwithstanding, we believe the State's evidence sufficiently showed defendant's prior arrest for drug possession was admissible under the theory that it went to the motive for the later drug-related murder. Defendant did not object pursuant to N.C. Gen. Stat. § 8C-1, Rule 403 (2003) after the court found the evidence admissible under N.C. Gen. Stat. § 8C-1, Rule 404(b), nor has defendant argued as such in his brief. Therefore, we need not review

the discretion of the court in balancing the probative value of the "motive" evidence verses its prejudicial effect.

This assignment of error is overruled.

After thorough review of the briefs, transcript, record, and relevant case law, in conformance with this opinion, we hereby order a

New trial.

Chief Judge MARTIN and Judge STEELMAN concur.