Justice EARLS concurring in part and dissenting in part.
**243 I agree with the majority that Mr. Mumma cannot meet the high burden of showing that the jury in this case probably would have either remained deadlocked or acquitted him of murder if the aggressor instruction had not been given, a burden he must meet because he did not object to the instruction at trial. State v. Lawrence , 365 N.C. 506, 517, 723 S.E.2d 326, 334 (2012). It is particularly noteworthy that the Court's basis for this conclusion is not the theory advanced by the State in this case, namely that defendant became the aggressor when he grabbed the knife from Ms. Chapman, but rather that the evidence of their relative physical injuries, combined with the text messages that Mr. Mumma sent in the hours before the fight demonstrating his state of mind that evening, could have led the jury to disbelieve "defendant's account of the circumstances surrounding Ms. Chapman's death" and reject his claim of self-defense.
Nonetheless, I cannot agree that the trial court's error in sending 179 photographs, including forty-one pictures of Ms. Chapman's dead body, to the jury room over defendant's objection, and therefore in violation of N.C.G.S. § 15A-1233(b), was harmless under the lower standard applicable to this error, namely that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached." N.C.G.S. § 15A-1443(a) (2017). Here, when the only question at issue was whether defendant acted in self-defense, it is entirely possible that the jury would have remained deadlocked or reached a different verdict if jurors had been required to view the photographs in the presence of all the parties in the courtroom, rather than in the privacy of the jury room.
The majority's approach to evaluating the reasonable possibility of a different result is to stand in the shoes of the jury and, "after carefully reviewing the record," come to a conclusion about what verdict the jury hypothetically would have reached if they had not been able to take the 179 photographs into the jury room for the duration of their deliberations. The majority, however, fails to take into account all the evidence in the record, which includes testimony that Ms. Chapman had a history of bipolar disorder and had previously stabbed Mr. Mumma in the arm. On another occasion Ms. Chapman threatened Mr. Mumma with a knife. Chapman was known to be quick to anger for no apparent reason. On the night in question, not only had she consumed a considerable amount of Klonopin and alcohol, but she also was "raising hell" because Mr. Mumma wanted to leave, accused him of pursuing another woman, **244 and pushed and slapped him. Ms. Chapman's son's first thought upon seeing some blood in the bedroom was that his mother had injured Mr. Mumma. Given that the only issue for the jury to decide was whether Mr. Mumma acted in self-defense, it is entirely possible that without prolonged exposure to forty-one pictures of Ms. Chapman's corpse, the jury would have remained deadlocked or reached a different verdict.
Also relevant to this question is the fact that the prosecutor in closing argument specifically directed the jury to take the photographs to the jury room with them and urged them to study the pictures showing Ms. Chapman's injuries:
If he stabbed her from the back -- if he stabbed her from the back, what does that say? Is he really thinking he's going to die? Is he grabbing for the knife? He wanted her dead.
Take that photo back. I hope you do. Take it with the other photos. You can request any exhibit you want. But ask for *300 the photo with the two dots on it. And I would love to put it up here, but in respect to the family, I don't think they need to see their daughter, and sister, and mother like that. That's why I've got these boards up here.
Take it back there. You're the jury. You get to decide. Not me, not Mr. Mumma, not Mr. Earwood. Look at it, and then look at those two wounds from the lacerations. And if you say yeah, it shouldn't take long.
Grossly excessive force. Stab wound to the left throat, stab wound to the right neck, stab wound to the right neck, stab wound to the right eye. Defensive wounds, both right and left hands. Top of her head had a bruising on her brain. He had to pull back her scalp and find it. Up here. That's what the red dots are on top.
This excerpt strongly suggests the photographs were key to the jury's deliberations and that if the court had followed the law, the jury may have been less influenced by the graphic and disturbing photographs and instead would have, in giving due consideration to all of the evidence in the case, concluded that it had a reasonable doubt as to Mr. Mumma's culpability for murder.
In other cases in which it is uncertain what happened in the jury room or impossible to guess what "might have been," prejudice to the defendant is assumed. Here all we know is that the jury asked to be able **245 to take all the photographs into the jury room. Whether jurors spent most of the three hours examining the pictures in detail, or looked at one or two and then placed them away on a shelf, is unknown. Perhaps jurors were simply complying with the prosecutor's request, or perhaps they used the pictures of Ms. Chapman's injuries to convince the holdout juror to join the other eleven to convict. If jurors had been required to view the photographs in the courtroom, as defendant had the right to insist, the jury's use of the photographs might have been very different. But the point is, we simply cannot know.
This Court has found per se reversible error in situations in which it is not possible to assess from the record whether the error was prejudicial. See, e.g. , State v. Hucks , 323 N.C. 574, 580-81, 374 S.E.2d 240, 244-45 (1988) (finding prejudicial error per se when a capital defendant did not have second counsel appointed for him); State v. Bindyke , 288 N.C. 608, 627-30, 220 S.E.2d 521, 533-35 (1975) (holding that reversible error per se occurs when an alternate juror is present in the jury room during jury deliberations). It is a curious result that the law says if an alternate juror is in the jury room, there is per se reversible error, but if a defendant objects to the jury taking evidence to the jury room, it remains the defendant's burden to show what cannot be proved with certainty, namely what happened behind the closed doors of the jury room and was in the jurors' minds as they reviewed that evidence in private. The similar problems faced in attempting to analyze prejudice in Bindyke and Hucks should be instructive in our analysis here. In our "careful review of the record" we should be wary of speculating too much about what is impossible to know.
There is further support for the proposition that it is impossible for a defendant to meet this standard. Even though state law provides that evidence can only go to the jury room if the parties consent, this Court has never found a violation of that statute to constitute prejudicial error. See State v. Locklear , 349 N.C. 118, 150-51, 505 S.E.2d 277, 296 (1998) (in which the defendant failed to establish prejudicial error in his conviction for first-degree murder based on the trial court's allowing the jury to take the defendant's statement to police into the jury room without his consent), cert. denied , 526 U.S. 1075, 119 S.Ct. 1475, 143 L.Ed.2d 559 (1999) ; State v. Cunningham , 344 N.C. 341, 364, 474 S.E.2d 772, 783 (1996) (The defendant failed to establish prejudicial error in his conviction for first-degree murder based on the trial court's allowing the jury to take evidence into the jury room without his consent, including "an unspent bullet, cartridge casing, and a bullet which had been pulled apart in the police laboratory."); State v. Cannon , 341 N.C. 79, 83-86, 459 S.E.2d 238, 241-43 (1995)
**246 (concluding that the defendant failed to establish prejudicial error in his conviction for first-degree murder based on the trial court's allowing the jury to take evidence into the jury room over his objection, including "photographs *301 from the scene of the crime and the autopsy, a copy of defendant's confession, [a witness's] first statement to the police, and a diagram of the crime scene"); State v. Huffstetler , 312 N.C. 92, 113-15, 322 S.E.2d 110, 123-24 (1984) (determining that the defendant failed to establish prejudicial error in his conviction for first-degree murder based on the trial court's allowing the jury to take evidence into the jury room over his objection, including photographs that showed "the overall view of the interior of the victim's trailer and the location of the body, a metal fragment found on the floor, and the false teeth found near the body"), cert. denied , 471 U.S. 1009, 105 S.Ct. 1877, 85 L.Ed.2d 169 (1985). Under the circumstances of this case, forty-one pictures of the victim's injuries, including autopsy photographs, are likely to have had some effect on the jury. Indeed, the very fact that the prosecutor emphasized the photographs in his closing argument, and the jury asked to see them, demonstrates that they had some significance.
The majority's analysis begins with the assumption that all 179 photographs were properly admitted into evidence, and therefore, the extent to which any of them may have been erroneously admitted in violation of Rule 403 of the North Carolina Rules of Evidence, because they were more prejudicial than probative, is irrelevant to whether defendant was prejudiced by the jury taking them back to the jury room without his consent. This determination misses the point of defendant's argument concerning a Rule 403 analysis. That it may be error under Rule 403 to admit gruesome, distressing, and redundant photographs of a victim demonstrates that the law recognizes the sensational and emotional effect that such photographs can have. State v. Hennis , 323 N.C. 279, 283-87, 372 S.E.2d 523, 526-28 (1988), and State v. Phipps , 331 N.C. 427, 451-54, 418 S.E.2d 178, 191-92 (1992), are relevant here not because the pictures in this case should not have been admitted at all, but because the logic of those cases should apply to whether defendant was prejudiced when the trial court allowed those pictures to go to the jury room without defendant's consent. In short, a picture is worth a thousand words, whether under Rule 403 or N.C.G.S. § 15A-1233(b). And a picture in the jury room throughout jurors' deliberations has a greater impact than a picture viewed in the courtroom during trial. Hence, it does not resolve the prejudice inquiry to note that the jury had already seen the pictures and heard narrative testimony about the injuries.
**247 If the General Assembly's decision to require the parties' consent before allowing evidence in a trial to go to the jury room, thus abrogating the common law rule that juries hear the evidence in the courtroom, is to have any legal effect, this Court must enforce it. See Gooding v. Pope , 194 N.C. 403, 404-05, 140 S.E. 21, 21 (1927) ("The practice at common law was against allowing the jury to examine the papers introduced in evidence, either during the trial or afterwards in the jury room." (citations omitted)); Watson v. Davis , 52 N.C. 178, 181 (1859) (stating that "[t]he jury ought to make up their verdict upon evidence offered to their senses, i. e., what they see and hear in the presence of the court," and should not be permitted to draw any inference "which their imaginations may suggest, because the opposite party ought to have an opportunity to reply to any suggestion of an inference contrary to what was made in open court"). In this particular case, where the issue is whether defendant acted in self-defense, and where the evidence of Mr. Mumma's slight injuries in comparison to Ms. Chapman's extensive ones is the main evidence supporting the conclusion that Mr. Mumma was the aggressor, I cannot conclude that gruesome pictures of Ms. Chapman's injuries had no effect on the jury's deliberations. Mr. Mumma was prejudiced by the trial court's error. I would reverse the ruling of the Court of the Appeals on this issue and remand for a new trial.