STATE OF NORTH CAROLINA v. ROBERT VERNON JONES, II

No. 148A93

(Filed 17 June 1994)

**1. Criminal Law § 465 (NCI4th) — reasonable doubt — erroneous jury argument — error cured by court's instructions**

Assuming *arguendo* that the prosecutor's definition of reasonable doubt in his jury argument was erroneous to the extent that it required an improperly high degree of doubt for acquittal, the trial court did not err by failing to immediately correct the prosecutor's erroneous definition where the trial

STATE v. JONES

[336 N.C. 490 (1994)]

court followed the prosecutor's argument with proper instructions correctly defining the term "reasonable doubt."

**Am Jur 2d, Trial § 640.**

**Counsel's right in criminal prosecution to argue law or to read lawbooks to the jury. 67 ALR2d 245.**

2. **Jury § 96 (NCI4th)— jury voir dire—ruling prohibiting questions previously answered—statutory violation—harmless error**

The trial court's ruling at the beginning of jury selection that counsel would not be permitted to ask any question of a prospective juror that had previously been asked of and answered by the juror violated the provision of N.C.G.S. § 15A-1214(c) which prohibits the trial court from preventing the prosecution or defense from asking a question of a prospective juror merely because the question has been previously asked by the court. However, defendant was not prejudiced by this statutory violation where this ruling prohibited only one question by defense counsel as to whether a juror understood that it was the prosecutor's burden to prove defendant guilty beyond a reasonable doubt; the juror later responded positively when asked whether she would hold the prosecutor to his burden of proving every element of the offense beyond a reasonable doubt; and defendant was thus not foreclosed from obtaining any information he sought.

**Am Jur 2d, Jury §§ 195 et seq.**

**Right of counsel in criminal case personally to conduct the voir dire examination of prospective jurors. 73 ALR2d 1187.**

Appeal of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered on 7 August 1992, by Jenkins, J., in the Superior Court, Johnston County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court on 1 February 1994.

*Michael F. Easley, Attorney General, by Michael S. Fox, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Robert Vernon Jones, II, was indicted for first-degree murder by a Johnston County Grand Jury on 9 September 1991. He was tried capitally at the 27 July 1992 Criminal Session of Superior Court, Johnston County. The jury returned a verdict finding the defendant guilty of first-degree murder. At the conclusion of a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of life imprisonment. The defendant appealed to this Court as a matter of right from the judgment of the trial court sentencing him to life imprisonment for first-degree murder. See N.C.G.S. § 7A-27(a) (1989).

The evidence presented at the defendant's trial tended to show the following. The defendant testified that he was 24 years old and was a construction worker. He had a ninth grade education. Becky Murray, the victim, first left home in 1989 to live with her sister in the J S & J Trailer Park. The defendant met Becky in November of 1990 while she was living with her sister. They began dating in November. In March or April of the following year, Becky moved in with the defendant in the same trailer park. At some point, Becky and the defendant moved to the Bell Hope Trailer Park.

On 10 August 1991, David Purdue spent most of the day with the defendant and Becky. They spent much of the day in several bars drinking and playing pool. He then took the defendant and Becky to their mobile home in the Bell Hope Trailer Park and left them.

Karen Eddy lived next door to the defendant and Becky. At about 11:30 p.m. on the evening of 10 August 1991, she saw David Purdue bring the defendant and Becky to their mobile home. Later, the defendant woke her by beating on her bedroom window asking for help. When Karen opened the door to her mobile home, she saw the defendant holding Becky around the waist. The defendant carried Becky in and put her on the kitchen floor. Karen observed that Becky was unconscious and had swollen eyes and a swollen jaw. Both of her lips were "busted." Karen also noticed marks on Becky's neck and noticed that Becky's hair was wet. Karen sent her boyfriend to get his truck so that someone could take Becky and the defendant to the hospital. The defendant told Karen that he and Becky had gotten into an argument and he had hit her. In response to Karen's question as to what had made Becky

pass out, the defendant replied he had hit her in the throat. Karen checked Becky's pulse at her mobile home and determined that she was alive. By the time they got to the hospital, she was not breathing. At the hospital, Karen heard the defendant tell a nurse that Becky had gotten into a fight at a party. The defendant also told Karen that he had "roundhoused" Becky.

Linda Kimbrough drove Karen, Becky and the defendant to the hospital that evening. Linda had been awakened by Karen's boyfriend. When she arrived at Karen's trailer, she observed Karen and the defendant attempting to resuscitate Becky. Linda noticed that Becky sounded as though she was choking on something. Linda heard the defendant say at the hospital that he had "backhanded" and "roundkicked" Becky.

Linda Thornton was the Supervising Emergency Room Nurse at Johnston Memorial Hospital on 11 August 1991 when Becky was brought there. She noticed that Becky was not breathing and that her blood pressure was very low. Becky was taken by helicopter to Duke Hospital. She never regained consciousness and died at 1:45 p.m. on 11 August 1991.

Dr. Karen Chancellor was the pathologist who performed the autopsy on Becky's body for the Office of the Chief Medical Examiner. Dr. Chancellor concluded from hemorrhaging in the victim's eyeballs, bruises and abrasions to the neck, and a fracture to the hyoid bone, that the cause of the victim's death had been manual strangulation.

During the course of the trial, other evidence was presented tending to show that on several occasions the defendant had attacked Becky and seriously injured her. There was also evidence that the defendant had been charged with assault on at least two prior occasions.

[1] By an assignment of error, the defendant contends that he is entitled to a new trial because the prosecutor misstated the definition of the phrase "reasonable doubt" and thereby violated his due process rights. The defendant contends that the prosecutor's argument to the jury included a definition of "reasonable doubt" similar to definitions which have been held to be error when given as a part of a trial court's jury instructions. He argues that this denied him due process and that he is entitled to a new trial as a result.

**STATE v. JONES**

[336 N.C. 490 (1994)]

The first of two prosecutors addressed the jury during closing arguments as follows:

Before we go any further, though, let me speak with you about something you're going to have to deal with in the jury room, and that's your decision standard. In the State of North Carolina, it's called beyond a reasonable doubt. Let me read you what the Supreme Court of this state has had to say about it. It said:

"A reasonable doubt is not a vain, imaginary, or fanciful doubt, but it is a sane, rational doubt. Where it is said the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, it must be fully satisfied or entirely convinced or satisfied to a moral certainty. Now, a reasonable doubt is an honest, substantial misgiving generated by the insufficiency of the proof, an insufficiency which fails to convince your judgment and conscience and satisfy your reason as to the guilt of the accused. It is not a doubt suggested by the ingenuity of counsel or by your own ingenuity not legitimately warranted by the testimony, or one born of merciful inclination or disposition to permit the defendant to escape the penalty of the law, or one prompted by sympathy for him or those connected with him."

All this is saying is that your decision must be based on common sense and reason. In other words, you use your common sense in deciding whether or not there is a reason, something you can identify, to doubt that the defendant is guilty. Now, the other language that you may hear emphasized, and which you, in fact, heard in the definition, includes "fully satisfied," "entirely satisfied," or "satisfied to a moral certainty." I tell you that none of this language, none of it at all, raises the State's burden of proof beyond a reasonable doubt. It just doesn't do it. These words do not mean that you must be satisfied beyond all doubt, beyond any doubt, or beyond a shadow of a doubt. Again, I remind you that your doubt must arise out of common sense and be based on a reason, something you can identify.

And when you think about it, the standard of beyond a reasonable doubt makes common sense, because to require the State to prove anything to you beyond all doubt, any doubt, or shadow of a doubt would be well nigh impossible.

. . . .

Now, about being fully satisfied or entirely convinced or satisfied to a moral certainty, simply means, again using your common sense in evaluating the evidence, you have no reason to doubt the defendant is guilty. Now, a moral certainty is simply one based on our own innate sense of what is right or wrong, because to be sure it would be wrong to convict someone if you have reason to believe they were not guilty.

Assuming *arguendo* that the definition of "reasonable doubt" given by the prosecutor contained error, the defendant is still entitled to no relief.

Both the Supreme Court of the United States and this Court have held that a *jury instruction* defining "reasonable doubt" which requires an improperly high degree of doubt for acquittal offends due process. *Victor v. Nebraska*, --- U.S. ---, 127 L. Ed. 2d 583 (1994); *Sullivan v. Louisiana*, --- U.S. ---, 124 L. Ed. 2d 182 (1993); *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1990); *State v. Williams*, 334 N.C. 440, 434 S.E.2d 588 (1993), *judgment vacated*, --- U.S. ---, 128 L. Ed. 2d 42 (1994); *State v. Bryant*, 334 N.C. 333, 432 S.E. 2d 291 (1993), *judgment vacated*, --- U.S. ---, 128 L. Ed. 2d 42 (1994); *State v. Montgomery*, 331 N.C. 559, 41 S.E.2d 742 (1993). However, such cases only dealt with definitions given by the trial court to the jury. They are not controlling here, where the statements complained of were made by the prosecutor during jury arguments.

The trial court did not err by failing to intervene during the prosecutor's argument in the present case. The record indicates that prior to the closing arguments of counsel, the trial court stated to the jury that "[a]t the conclusion of these arguments, I will instruct you on the law in this case, and then you will be taken to the jury room to begin your deliberations." Additionally, the second prosecutor and both defense attorneys specifically stated during their jury arguments that the jury must take the law from the instructions of the trial court. Further, at the conclusion of the arguments of counsel, the trial court gave proper instructions on all aspects of the case, including the definition of "reasonable doubt." Specifically, the trial court instructed as follows:

The State must prove to you that the defendant is guilty beyond a reasonable doubt. A reasonable doubt is a doubt

based on reason and common sense arising out of some or all of the evidence that has been presented, or a lack or insufficiency of the evidence, as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt.

This was a correct statement of the law by the trial court. *State v. Hudson*, 331 N.C. 122, 140, 415 S.E.2d 732, 742 (1992), *cert. denied*, --- U.S. ---, 122 L. Ed. 2d 136 (1993); N.C.P.I.— Crim. 101.10 (1974); *see Victor*, --- U.S. at ---, 127 L. Ed. 2d at 590.

We have assumed *arguendo* for purposes of this case that the prosecutor's definition of "reasonable doubt" complained of by the defendant was erroneous to the extent that it required an improperly high degree of doubt for acquittal. Nevertheless, we conclude that the trial court did not err in failing to immediately correct the prosecutor's erroneous definition where, as here, the trial court followed the complained-of argument of the prosecutor with proper instructions correctly defining the term "reasonable doubt." In this context, any error of the prosecutor in defining the term "reasonable doubt" could not have denied the defendant due process and did not require a new trial. *See State v. Anderson*, 322 N.C. 22, 38, 366 S.E.2d 459, 470 (1988); *State v. Gladden*, 315 N.C. 398, 426, 340 S.E.2d 673, 690-91, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986); *State v. Oliver*, 309 N.C. 326, 359, 307 S.E. 2d 304, 325 (1983); *State v. Harris*, 290 N.C. 681, 695-96, 228 S.E.2d 437, 445 (1976); *see also Darden v. Wainwright*, 477 U.S. 168, 91 L. Ed. 2d 144 (standard to be applied to prosecutorial misconduct), *reh'g denied*, 478 U.S. 1036, 92 L. Ed. 2d 774 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 40 L. Ed. 2d 431 (1974) (same); *State v. Green*, 336 N.C. 142, 186, 443 S.E.2d 14, --- (1994) (same). This assignment of error is overruled.

[2] By his next assignment of error, the defendant contends that the trial court erred in preventing his counsel from asking jurors questions, solely because the trial court had previously asked the same or similar questions. The defendant contends that this violated N.C.G.S. § 15A-1214(c) and entitles him to a new trial. Though we conclude that the trial court erred in this regard, we also conclude that the defendant has not suffered any resulting prejudice.

The trial court announced at the beginning of jury selection that it would not permit counsel for either side to ask any question of a prospective juror that the juror had been asked previously

STATE v. JONES

[336 N.C. 490 (1994)]

and had answered. Even though the defendant did not object, this assignment of error is reviewable. When a trial court acts contrary to a statutory mandate, the right to appeal the court's action is preserved, notwithstanding the failure of the appealing party to object at trial. *See State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985); *State v. Bryant*, 189 N.C. 112, 126 S.E. 107 (1925).

The statute applicable to the jury *voir dire* in the present case provides:

> The prosecutor and the defense counsel, or the defendant if not represented by counsel, may personally question prospective jurors individually concerning their fitness and competency to serve as jurors in the case to determine whether there is a basis for a challenge for cause or whether to exercise a peremptory challenge. The prosecution or defense is not foreclosed from asking a question merely because the court has previously asked the same or similar question.

N.C.G.S. § 15A-1214(c) (1988). The defendant contends that the trial court's ruling prohibited him from taking advantage of the right expressly given by this statute and constituted error. We agree.

This Court has held that "[t]his statutory right to *voir dire* examination serves a double purpose, first, to determine whether a basis for challenge for cause exists, and second, to enable counsel to intelligently exercise peremptory challenges." *State v. Soyars*, 332 N.C. 47, 56, 418 S.E.2d 480, 486 (1992). The extent and manner of that inquiry, however, rests within the sound discretion of the trial court. *Id.* "Therefore, defendant must show prejudice, as well as a clear abuse of discretion, to establish reversible error." *State v. Syriani*, 333 N.C. 350, 372, 428 S.E.2d 118, 129, *cert. denied*, --- U.S. ---, 126 L. Ed. 2d 341 (1993), *reh'g denied*, --- U.S. ---, 126 L. Ed. 2d 707 (1994).

The trial court's ruling in this case was contrary to the language and intent of the statute. N.C.G.S. § 15A-1214 prohibits the trial court from preventing the prosecution or defense from asking a question of a prospective juror *merely* because the question has been previously asked by the court. The statute does not, however, entitle either the prosecution or the defense to ask improper or repetitious questions; nor does it prohibit the trial court, in its discretion, from sustaining objections to such questions. The trial court is expected to exercise its discretion in determining whether

to permit such questions. The trial court in this case, however, ruled from the outset that no questions would be allowed if they had been previously asked of and answered by the juror in question. We conclude that the trial court erred in this regard since its ruling had the effect of preventing the defendant from asking questions *solely* because jurors had previously been asked the same questions. This ruling was contrary to N.C.G.S. § 15A-1214(c).

Having determined the trial court's action to have been contrary to the statute, we must next determine its prejudicial effect, if any, on the defendant's trial. Because the defendant was not foreclosed from obtaining any information he sought, we conclude that the statutory violation in this case was not so prejudicial as to require a new trial.

The trial court's error in this case

> does not constitute denial of a constitutional right but rather a right granted by statute. The standard for determining prejudicial error is, therefore, governed by N.C.G.S. § 15A-1443(a), and the determinative issue is whether "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (1988).

*State v. Conner*, 335 N.C. 618, 630, 440 S.E.2d 826, 833 (1994). After reviewing the entire transcript of the selection of the jury, we are unable to identify, and defendant has failed to point out, any possible prejudice resulting from the trial court's ruling. The transcript reveals that only once was counsel specifically prevented from asking a question of a potential juror. The defendant was not allowed to ask a juror, "Do you understand it's the prosecutor's burden to prove the defendant guilty, and they must do that beyond a reasonable doubt?" Five questions later, the juror was asked, "Would you hold the prosecutor to his burden of proving every element of the offense beyond a reasonable doubt?" The juror answered "Yes, sir." Nothing in the record tends to show that a different result might have been reached at trial, absent the trial court's ruling which is the subject of this assignment of error. Therefore, we conclude that it did not prejudice the defendant. *Conner*, 335 N.C. at 630, 440 S.E.2d at 833; N.C.G.S. § 15A-1443(a) (1988).

The only questions prohibited by the trial court's ruling were ones previously asked and answered. The action of the trial court did not deprive the defendant of his right to complete information about each prospective juror concerning her or his fitness and competency to serve as a juror. The record indicates that on many occasions, counsel were allowed to ask jurors questions substantially similar to, or completely repetitious of, questions previously asked the same jurors by the trial court. For these reasons, we conclude that the defendant has failed to demonstrate that the trial court's error resulted in prejudice entitling him to a new trial. This assignment of error is overruled.

Having carefully reviewed the record and each of defendant's assignments of error, we hold that defendant received a fair trial free of prejudicial error.

NO ERROR.