NO. COA14-143

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

In the matter of:

JAMES SPENCER                          Wake County
                                       No. 13 SPC 3751


Appeal by respondent from order entered 25 July 2013 by Judge Debra Sasser in Wake County District Court. Heard in the Court of Appeals 11 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Josephine Tetteh, for the State.*
>
> *Parker Poe Adams & Bernstein LLP, by Matthew W. Wolfe and Robert A. Leandro, for petitioner-appellee Holly Hill Hospital.*
>
> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Mary Cook, for respondent.*

McCULLOUGH, Judge.

Respondent James Spencer appeals from an order of the trial court, involuntarily committing him to inpatient treatment for a period not to exceed sixty (60) days. Based on the reasons stated herein, we affirm the order of the trial court.

I. Background

On 20 July 2013, Dr. Sharyn Comeau of Wake Med Hospital filed an affidavit and petition for involuntary commitment, providing that respondent James Spencer was "mentally ill and dangerous to self or others or mentally ill and in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness." The affidavit stated that respondent

> has ongoing psychosis and hyper religiosity concerning the mark of the beast and people in authority being satanic in some way. He continues to make decisions that compromise his medical care, currently his sodium [is] compromised to the point of needing medical intervention. He has multiple past psychiatric hospitalizations and he has a sister who his his [sic] guardian t in part [sic] of his medically compromising his health due to his lack of judgment and insight. He cannot be safely released into the community at this time.

On the same day, Dr. Comeau also completed an "Examination and Recommendation to Determine Necessity for Involuntary Commitment." Dr. Comeau opined that respondent was mentally ill and dangerous to himself, and recommended inpatient commitment for ten (10) days. On 22 July 2013, respondent was admitted to Holly Hill Hospital.

A hearing was held at the 25 July 2013 session of Wake County District Court. Dr. Muhammed Saeed, a psychiatrist at

Holly Hill Hospital, testified that he had examined respondent on 23 July 2013. Dr. Saeed described respondent as "very psychotic, very paranoid, very agitated, not caring for self." Dr. Saeed stated that respondent had multiple medical problems, but that the "most concerning is hyponatremia" which if it is not treated, could be life threatening. Dr. Saeed opined that respondent was mentally ill and suffering from schizophrenia. Respondent displayed extreme paranoid ideation, somatic delusions, and grandiose delusions. Dr. Saeed testified that respondent was unable to care for himself as demonstrated by his inability to restrict his fluid intake and his refusal to take his medication the two previous days. Dr. Saeed testified that he believed respondent was in need of further inpatient treatment at Holly Hill Hospital and recommended a commitment of sixty (60) days.

Respondent testified at the hearing. Respondent agreed that he suffered from schizophrenia but did not think he needed inpatient treatment and should have been discharged from Holly Hill Hospital.

On 25 July 2013, the trial court entered an involuntary commitment order. The trial court found by clear, cogent and convincing evidence that

THE RESPONDENT CONTESTS COMMITMENT. The respondent acknowledges and recognizes that he suffers from a mental illness, that being schizophrenia. Symptoms include psychotic behavior (somatic delusions and grandiose delusions) and extreme paranoid behavior as well as agitation. However, the respondent does not appreciate the degree of his paranoia, and this has resulted in situations wherein he has threatened physical aggression in response to medical treatment.

The respondent suffers from hyponatremia. Low sodium levels can be a life threatening situation. The respondent disagrees with his health care provider's assessment of his sodium levels. The respondent has been told to intake no more than 1 liter of fluid, which is about one quart (or 32 ounces). While the respondent is trying to . . . monitor his fluid intake, he believes that he can consume 56 ounces of fluid (7 eight-ounce cups).

Since his June 21, 2013 initial admission to Holly Hill, the respondent's compliance with medication has been up and down. Most recently, for the past two days he has refused all medication, including medication to treat his mental illness and his hyponatremia. Without medical treatment, the respondent will suffer from ongoing psychotic decompensation. The respondent is not able to appropriately cope with stress, is not following recommendations, and won't cooperate with doctor's advice.

The respondent has poor insight into his paranoia and physical health condition. The respondent's refusal to take his medication or follow his health care provider's instructions regarding fluid intake demonstrate an inability to satisfy his need

for medical care. The respondent is unable to take care of himself without a structured environment. He is not currently stable from a mental or physical health perspective. There is a reasonable probability of the respondent's suffering serious physical debilitation within the near future unless adequate treatment is given.

Based on the foregoing reasons, the trial court concluded that respondent was mentally ill and dangerous to himself. Respondent was committed to an inpatient facility for a period not to exceed sixty (60) days.

On 22 August 2013, respondent filed notice of appeal from the 25 July 2013 order.

## II. Discussion

On appeal, respondent argues that (A) his involuntary commitment was contrary to law because he was not evaluated by a second physician within 24 hours of admission to the Holly Hill Hospital in violation of N.C. Gen. Stat. § 122C-266 and that (B) the trial court erred by involuntarily committing respondent where he was not given notice of the commitment proceeding in violation of N.C. Gen. Stat. § 122C-264.

Before addressing the merits of respondent's appeal, we first address the preliminary matter of whether his appeal is moot. Although the sixty (60) day commitment period provided in the 25 July 2013 order has expired, our Supreme Court has held

that "[t]he possibility that respondent's commitment in this case might likewise form a basis for a future commitment, along with other obvious collateral legal consequences, convinces us that this appeal is not moot." *In re Hatley*, 291 N.C. 693, 695, 231 S.E.2d 633, 635 (1977). Therefore, we hold that respondent's appeal is not moot and address the merits of his appeal.

## A.    Examination by a Physician

Respondent argues that the record does not demonstrate that he was examined by a second physician within twenty-four hours of being admitted to Holly Hill Hospital, in violation of N.C. Gen. Stat. § 122C-266. Respondent admits that while Dr. Saeed testified that he examined respondent on 23 July 2013, there was no written record of the examination demonstrating Dr. Saeed's findings. As such, respondent contends that the 25 July 2013 order should be vacated.

"It is well established that when a trial court acts contrary to a statutory mandate and a [party] is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding [the party's] failure to object at trial." *State v. Davis*, 364 N.C. 297, 301, 698 S.E.2d 65, 67 (2010) (citation and quotation marks omitted).

N.C. Gen. Stat. § 122C-266 provides that

> (a) Except as provided in subsections (b) and (e), within 24 hours of arrival at a 24-hour facility described in G.S. 122C-252, the respondent shall be examined by a physician. This physician shall not be the same physician who completed the certificate or examination under the provisions of G.S. 122C-262[1] or G.S. 122C-263[2]. The examination shall include but is not limited to the assessment specified in G.S. 122C-263(c).
>
> . . . .
>
> (c) The findings of the physician and the facts on which they are based shall be in writing, in all cases. A copy of the findings shall be sent to the clerk of superior court by reliable and expeditious means.

N.C. Gen. Stat. § 122C-266(a) and (c) (2013).

Our Court has previously held that "[t]he purpose of the second examination [pursuant to N.C. Gen. Stat. § 122C-266] is to protect the rights of a respondent who has been taken to a medical facility immediately prior thereto to insure that he was properly committed." *In re Lowery*, 110 N.C. App. 67, 70, 428 S.E.2d 861, 863 (1993).

---

[1]N.C. Gen. Stat. § 122C-262 is entitled "Special emergency procedure for individuals needing immediate hospitalization."
[2]N.C. Gen. Stat. § 122C-263 is entitled "Duties of law-enforcement officer; first examination by physician or eligible psychologist."

Here, respondent concedes that Dr. Saeed's testimony illustrates that he conducted an examination of respondent on 23 July 2013, the day after he was admitted to Holly Hill Hospital. Dr. Saeed's testimony indicated that he believed respondent to be mentally ill with a diagnosis of schizophrenia. Dr. Saeed also stated throughout his testimony that respondent was a danger to himself because he refused to take necessary medication, was unable to care for himself, and was unable to limit his fluids in order to keep his sodium level normal. On appeal, respondent does not contest the substance of Dr. Saeed's testimony, nor does he argue that he was improperly committed based on any insufficiency of Dr. Saeed's examination. Reviewing the record, we are unable to find that respondent was prejudiced by the absence of a written record of Dr. Saeed's findings. Based on the foregoing, we reject respondent's argument that the involuntary commitment order should be vacated.

## B.  Notice of Hearing

Next, respondent argues that the trial court erred by failing to provide respondent with notice of the 25 July 2013 commitment hearing in violation of N.C. Gen. Stat. § 122C-264.

N.C. Gen. Stat. § 122C-264(c) provides that

> [n]otice to the respondent, . . . shall be given as provided in G.S. 1A-1, Rule 4(j) at least 72 hours before the hearing. Notice to other individuals shall be sent at least 72 hours before the hearing by first-class mail postage prepaid to the individual's last known address. G.S. 1A-1, Rule 6 shall not apply.

N.C. Gen. Stat. § 122C-264(c) (2013).

In the present case, the trial court stated at the end of the 25 July 2013 hearing that "I've noted that concern that his power of attorney was not given the notice that [respondent] thinks they're entitled to." Nonetheless, the transcript of the hearing reveals that both respondent and his attorney were present at the hearing. Respondent was able to testify on his own behalf. Most importantly, respondent has not argued or demonstrated that the failure to receive notice of the hearing resulted in his inability to adequately prepare for the hearing. Because respondent has failed to establish that he was prejudiced by the failure to receive notice of the 25 July 2013 hearing, his argument is overruled.

## III. Conclusion

Where respondent has failed to demonstrate any prejudice by the lack of a written record of his second examination by a physician and by any failure to give respondent notice of the 25 July 2013 hearing, we affirm the order of the trial court.

Affirmed.

Judges STEELMAN and ERVIN concur.