IN THE SUPREME COURT OF NORTH CAROLINA

No. 125PA18

Filed 10 May 2019

IN THE MATTER OF: E.D.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 813 S.E.2d 630 (2018), vacating an order entered on 5 January 2017 by Judge Dan Nagle in District Court, Wake County. Heard in the Supreme Court on 6 March 2019.

*Joshua H. Stein, Attorney General, by Robert T. Broughton, Assistant Attorney General, for the State, petitioner-appellant.*

*Glenn Gerding, Appellate Defender, by Wyatt Orsbon, Assistant Appellate Defender, for respondent-appellee.*

HUDSON, Justice.

This case is before us pursuant to the State's petition for discretionary review[1] of the Court of Appeals' decision which held that "in cases where a respondent [who is involuntarily committed to a State health facility] does not receive an examination by a second physician as mandated by N.C. Gen. Stat. § 122C-266(a), the respondent is not required to make a showing of prejudice resulting from the statutory violation in order to have the trial court's order authorizing her continued commitment

---

[1] Respondent's conditional petition for discretionary review was denied on 7 June 2018.

vacated." *In re E.D.*, ___ N.C. App. ___, ___, 813 S.E.2d 630, 634 (2018). We now review: (1) whether "the Court of Appeals erred in concluding that N.C. Gen. Stat. § 122C-266(a) was the type of statutory mandate for which the right to appellate review is automatically preserved regardless of a failure to object in the trial court"; and (2) whether "the Court of Appeals erred in concluding that appellate relief is automatically merited upon the showing of a violation of N.C. Gen. Stat. § 122C-266(a)." Because the Court of Appeals erred in concluding that N.C.G.S. § 122C-266(a) imposes a statutory mandate that automatically preserves violation of that subsection for appellate review—and because respondent did not otherwise preserve her argument alleging the violation by objecting on that basis at the hearing on her involuntary commitment—we reverse the Court of Appeals' decision without deciding whether prejudice must be shown to obtain relief on appeal.

## I.    Factual and Procedural Background

The facts of this case begin on 26 December 2016 when respondent's sister filed an affidavit and petition for involuntary commitment in the District Court in Wake County requesting that respondent be taken into custody.

In the affidavit respondent's sister swore that respondent was mentally ill, was a danger to herself or others, was in need of treatment for her mental illness in order to prevent further disability and deterioration that would predictably result in dangerousness, and was a substance abuser who was dangerous to herself or others.

In support of these assertions, respondent's sister swore to the following facts: (1) respondent was suicidal; (2) respondent attempted to jump out of a moving vehicle on Christmas Eve; (3) respondent threatened to kill her sister, her niece, and her mother when respondent's sister turned out a light in her own home and moved eggs in the refrigerator; (4) respondent has thrown knives, computers, and chairs at her sister; (5) respondent has been diagnosed with bipolar I disorder with manic, psychotic features; (6) respondent has abused prescription drugs and attempted to break down a bathroom door when she was intoxicated after drinking liquor; and (7) respondent threatened to "beat the skin off" her mother's face.

At 7:01 p.m. on the same day that respondent's sister filed the affidavit and petition, a magistrate found that respondent was mentally ill, was a danger to herself or others, was in need of treatment in order to prevent further disability and deterioration that would predictably result in dangerousness, and was a substance abuser who was dangerous to herself or others. Based on these findings, the magistrate ordered that law enforcement take the respondent into custody for examination by a physician or eligible psychologist within twenty-four hours of issuance of the order.[2] Respondent was taken into custody by Raleigh police at 8:00

---

[2] N.C.G.S. § 122C-261(b) (2017) ("If the clerk or magistrate finds reasonable grounds to believe that the facts alleged in the affidavit are true and that the respondent is probably mentally ill and either (i) dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b., or (ii) in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness, the clerk or magistrate shall issue an order to a law enforcement officer or any other person authorized

p.m., and she was transported to UNC Hospital in Chapel Hill, North Carolina, at 8:30 p.m.[3]

On 27 December at 1:30 p.m., respondent received her first examination by a physician as required by law.[4] The examining physician opined that respondent was mentally ill, was a danger to herself, and was a danger to others. As a result of these findings, the physician recommended that respondent should be subject to inpatient commitment for fifteen days.[5]

On the same day as her first examination at UNC Hospital, respondent was transported to UNC Wakebrook Psychiatric Services (UNC Wakebrook) in Raleigh to begin her inpatient commitment. After her arrival at UNC Wakebrook, respondent received her second examination as required by law at 4:45 p.m.;[6] however, during this examination, respondent was seen by a *psychologist*. She was not examined by

---

under G.S. 122C-251 to take the respondent into custody for examination by a physician or eligible psychologist.").

[3] Under North Carolina law, a law enforcement officer who assumes custody over a mentally ill individual under N.C.G.S. § 122C-261(b) must, "[w]ithout unnecessary delay," take the individual to a facility for an examination "by a physician or eligible psychologist." *Id.* § 122C-263(a) (2017).

[4] North Carolina law requires that, upon being taken into custody, the individual be examined by a "physician or eligible psychologist" within twenty-four hours. *Id.* § 122C-263(c) (2017).

[5] "If the physician or eligible psychologist finds that the respondent is mentally ill and is dangerous to self, as defined in G.S. 122C-3(11)a., or others, as defined in G.S. 122C-3(11)b., the physician or eligible psychologist shall recommend inpatient commitment, and shall so show on the examination report." *Id.* § 122C-263(d)(2) (2017).

[6] *Id.* § 122C-266(a) (2017) (requiring that a person subject to involuntary inpatient commitment be examined within twenty-four hours of arrival at a facility).

a *physician* as required by law. N.C.G.S. § 122C-266(a) (2017) ("[W]ithin 24 hours of arrival at a 24-hour facility described in G.S. 122C-252, the respondent shall be examined by a *physician*." (emphasis added)); *see also id.* § 122C-3(29), (30a) (Supp. 2018) (defining "physician" and "psychologist" separately, and stating that a "physician" is "an individual licensed to practice medicine in North Carolina under Chapter 90 of the General Statutes or a licensed medical doctor employed by the Veterans Administration").

Based on her evaluation of respondent, the psychologist opined that respondent was mentally ill, a danger to herself, and a danger to others. Accordingly, the psychologist recommended that respondent be subject to inpatient commitment for five to ten days.[7] Respondent remained in custody at UNC Wakebrook until the hearing on her involuntary commitment in the District Court in Wake County on 5 January 2017.

Immediately following the hearing, the district court ordered that respondent be involuntarily committed at UNC Wakebrook for a period not to exceed thirty days.[8]

---

[7] "If the physician finds that the respondent is mentally ill and is dangerous to self, as defined by G.S. 122C-3(11)a., or others, as defined by G.S. 122C-3(11)b., the physician shall hold the respondent at the facility pending the district court hearing." *Id.* § 122C-266(a)(1). "A hearing shall be held in district court within 10 days of the day the respondent is taken into law enforcement custody pursuant to G.S. 122C-261(e) or G.S. 122C-262." *Id.* § 122C-268(a) (Supp. 2018).

[8] "To support an inpatient commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b. The court shall

In its order the court found that respondent was mentally ill; and was a danger to herself and others. At no point during the hearing did respondent raise the issue that her second examination was not conducted by a physician as required by N.C.G.S. § 122C-266(a). Respondent filed her notice of appeal on 27 January 2017.

The Court of Appeals vacated respondent's involuntary commitment order. *In re E.D.*, ___ N.C. App. at ___, 813 S.E.2d at 634. In so doing, the court reached two conclusions that are pertinent here. First, relying on its own decision in *In re Spencer*, the Court of Appeals held that respondent's argument—that N.C.G.S. § 122C-266(a) was violated when her second examination was conducted by a psychologist in lieu of a physician—was preserved for appellate review even though respondent did not raise the issue in the district court hearing on her involuntary commitment. *Id.* at ___, 813 S.E.2d at 632 (citing *In re Spencer*, 236 N.C. App. 80, 84-85, 762 S.E.2d 637, 640 (2014), *disc. rev. denied*, 367 N.C. 811, 767 S.E.2d 529 (2015)). Specifically, the Court of Appeals reasoned that its previous decision in *In re Spencer* required it to conclude that N.C.G.S. § 122C-266(a) places a "statutory mandate" upon the trial court that renders any violation of that subsection automatically preserved for appellate review. *Id.* at ___, 813 S.E.2d at 632.

---

record the facts that support its findings." *Id.* § 122C-268(j) (Supp. 2018).

Although respondent's involuntary commitment order has expired, this case is not moot. *In re Hatley*, 291 N.C. 693, 695, 231 S.E.2d 633, 635 (1977) ("The possibility that respondent's commitment in this case might likewise form the basis for a future commitment, along with other obvious collateral consequences, convinces us that this appeal is not moot.").

Second, the Court of Appeals relied on its own decision in *In re Barnhill,* to hold that the violation of N.C.G.S. § 122C-266(a) entitled respondent to relief without her needing to show that she was prejudiced by the violation. *Id.* at ___, 813 S.E.2d at 633 (citing *In re Barnhill*, 72 N.C. App. 530, 532, 325 S.E.2d 308, 309 (1985)). In its analysis the Court of Appeals distinguished the facts here and those of *In re Barnhill*, from the facts of *In re Spencer*, in which a respondent was required to demonstrate prejudice. *Id.* at ___, 813 S.E.2d at 633-34 (citations omitted). The court reasoned that *In re Spencer* is distinct from the situation presented here because in *In re Spencer*, the respondent conceded that he was actually examined by a physician, *id.* at ___, 813 S.E.2d at 633 ("Here, respondent concedes that Dr. Saeed's testimony illustrates that he conducted an examination of respondent on 23 July 2013, the day after he was admitted to Holly Hill Hospital." (quoting *In re Spencer*, 236 N.C. App. at 85, 762 S.E.2d at 640)); however, "no written records existed documenting the fact that a second physician had examined the respondent," *id.* at ___, 813 S.E.2d at 633 (citing *In re Spencer*, 236 N.C. App. at 84, 762 S.E.2d at 640). The Court of Appeals limited *In re Spencer* to its facts by reasoning that "*Spencer* cannot be read as standing for the entirely separate proposition that in cases where—as here—the second examination requirement of N.C. Gen. Stat. § 122C-266(a) clearly has *not* been followed, a respondent must nevertheless show prejudice stemming from her failure to receive a second examination." *Id.* at ___, 813 S.E.2d at 633-34.

We allowed the State's petition for discretionary review of the Court of Appeals' decision on 7 June 2018 and now review the issues presented therein: (1) whether respondent's issue is automatically preserved for appellate review; and (2) whether respondent is entitled to relief on appeal without the need to demonstrate prejudice from the violation of N.C.G.S. § 122C-266(a).

## II. Analysis

We conclude that the Court of Appeals erred when it held that N.C.G.S. § 122C-266(a) imposes a statutory mandate that automatically preserves a violation of that provision for appellate review. On that basis, we reverse the decision of the Court of Appeals. Because we so conclude, and because respondent did not raise the issue of the violation of N.C.G.S. § 122C-266(a) at the district court hearing on her involuntary commitment, this issue is not preserved for appellate review. As a result, we need not—and do not—reach the issue of whether the Court of Appeals erred in concluding that respondent was not required to demonstrate prejudice from the violation.

This Court reviews a decision of the Court of Appeals for errors of law. N.C. R. App. P. 16(a); *State v. Mumford*, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010) (citing *State v. Brooks*, 337 N.C. 132, 149, 446 S.E.2d 579, 590 (1994)).

Rule 10 of the North Carolina Rules of Appellate Procedure states the general rule governing how parties preserve issues for appellate review:

> In order to preserve an issue for appellate review, a party

> must have presented to the trial court a timely request,
> objection, or motion, stating the specific grounds for the
> ruling the party desired the court to make if the specific
> grounds were not apparent from the context. It is also
> necessary for the complaining party to obtain a ruling upon
> the party's request, objection, or motion.

N.C. R. App. P. 10(a)(1). Here, because respondent did not raise the issue of the

violation of N.C.G.S. § 122C-266(a) before the district court, she failed to preserve

this issue for appellate review under Rule 10 of the North Carolina Rules of Appellate

Procedure.

Nonetheless, "[i]t is well established that 'when a trial court acts contrary to a

statutory mandate and a defendant is prejudiced thereby, the right to appeal the

court's action is preserved, notwithstanding defendant's failure to object at trial.' "

*State v. Davis*, 364 N.C. 297, 301, 698 S.E.2d 65, 67 (2010) (first quoting *State v. Ashe*,

314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) (citation omitted); then citing *State v.*

*Tirado*, 358 N.C. 551, 571, 599 S.E.2d 515, 529 (2004), *cert. denied*, 544 U.S. 909, 125

S. Ct. 1600, 161 L. Ed. 2d. 285 (2005)); *see State v. Hucks,* 323 N.C. 574, 579, 374

S.E.2d 240, 244 (1988) ("When a trial court acts contrary to a statutory *mandate*, the

error ordinarily is not waived by the defendant's failure to object at trial." (citing

*Ashe,* 314 N.C. at 39, 331 S.E.2d at 659)); *see also State v. Bryant*, 189 N.C. 112, 115,

126 S.E. 107, 109 (1925) ("The fact that exception was not entered at the time the

remark was uttered is immaterial. The statute is mandatory, and . . . may be

excepted to after the verdict." (citation omitted)).

When a statute "is clearly mandatory, and its mandate is directed to the trial court," the statute automatically preserves statutory violations as issues for appellate review. *Hucks*, 323 N.C. at 579, 374 S.E.2d at 244; *see Ashe,* 314 N.C. at 40, 331 S.E.2d at 659 ("N.C.G.S. § 15A-1233(a) require[s] the trial court to summon all jurors into the courtroom before hearing and addressing a jury request to review testimony and to exercise its discretion in denying or granting the request."); *Bryant*, 189 N.C. at 114, 126 S.E. at 108 ("No judge, in giving a charge to the petit jury, either in a civil or a criminal action, shall give an opinion whether a fact is fully or sufficiently proven . . . ." (quoting 1 N.C. Cons. Stat. § 564 (1919)); *see also State v. Aikens*, 342 N.C. 567, 578, 467 S.E.2d 99, 106 (1996) (concluding that N.C.G.S. § 15A-1235(c) (1988) was "permissive rather than mandatory" (citing *State v. Williams*, 315 N.C. 310, 326, 338 S.E.2d 75, 85 (1986))).

The State and respondent do not disagree with the rule that a statute's mandate must be directed to the trial court in order to automatically preserve a statutory violation as an issue for appellate review; *see, e.g., Davis*, 364 N.C. at 303, 698 S.E.2d at 68 (concluding that the trial court "is not authorized to impose punishment for the offenses enumerated in subsection (b) [of N.C.G.S. § 20-141.4 (2009)]"); *Hucks*, 323 N.C. at 579, 374 S.E.2d at 244; however, they do disagree about when a statute's mandate is directed to the trial court. Specifically, and relying on

our decisions in *Davis, Hucks*, and *Ashe*,[9] the State contends that a statute directs its

mandate to a trial court when it does so expressly or when it "involve[s] actions that

a trial court can perform:  returning jurors to a courtroom, ensuring a random panel

of jurors, appointing assistant counsel, or sentencing in accordance with the law."

Respondent argues, however, that the State's interpretation of our case law is "not

the end of the story.  Some statutes, this Court has observed, implicitly impose a

---

[9] The State also relies on our decision in *State v. Braxton*, 352 N.C. 158, 177, 531 S.E.2d 428, 439 (2000), *cert. denied*, 531 U.S. 1130, 121 S. Ct. 890, 148 L. Ed. 2d 797 (2001). However, such reliance is misplaced because, in that decision, we did not conclude that the issue was automatically preserved for appeal. *Id.* at 177, 531 S.E.2d at 439. In fact, *Braxton* belongs to a line of cases in which we have determined that a defendant waives appellate review of the requirement found in N.C.G.S. § 15A-1214(a) that jurors be selected from the panel by a random procedure when that defendant fails to follow the statutory procedure for challenging the jury panel. *See* N.C.G.S. § 15A-1211(c) (2017) ("The State or the defendant may challenge the jury panel."); *Braxton*, 352 N.C. at 177, 531 S.E.2d at 439 ("In this case, defendant never followed th[e] specific procedure [under N.C.G.S. § 15A-1211(c) (1999) for asserting a challenge to the jury empaneling procedure]. . . . In light of defendant's failure to follow the procedures . . . we hold that defendant failed to preserve this issue for appellate review." (citing *State v. Atkins*, 349 N.C. 62, 102-03, 505 S.E.2d 97, 122 (1998), *cert. denied*, 526 U.S. 1147, 119 S. Ct. 2025, 143 L. Ed. 2d 1036 (1999)); *see also Tirado*, 358 N.C. at 571, 599 S.E.2d at 530 (reasoning that the defendants waived their assignment of error regarding selection of their jury panel when they failed to follow the procedure in N.C.G.S. § 15A-1211(c) (2003)); *State v. Wiley*, 355 N.C. 592, 606-07, 565 S.E.2d 22, 34-35 (2002) (concluding that the defendant's statutory challenge to the jury selection procedure was preserved in N.C.G.S. § 15A-1211(c) (2001), but ultimately determining that the defendant's failure to follow the statutory procedure waived his challenge), *cert. denied*, 537 U.S. 1117, 123 S. Ct. 882, 154 L. Ed. 2d 795 (2003); *State v. Meyer*, 353 N.C. 92, 112-13, 540 S.E.2d 1, 13 (2000) (concluding that the defendant did not preserve the issue for appellate review when he failed to follow the procedure contained in N.C.G.S. § 15A-1211(c) (1999)), *cert. denied*, 534 U.S. 839, 122 S. Ct. 93, 151 L. Ed. 2d 54 (2001); *State v. Golphin*, 352 N.C. 364, 411-12, 533 S.E.2d 168, 202 (2000) (concluding that the defendants' challenge to the jury empaneling procedure on the grounds that it was not random as required by N.C.G.S. § 15A-1214(a) (1999) was preserved even though defendants did not follow the procedure contained in N.C.G.S. § 15A-1211(c), but ultimately concluding that their failure to comply with that subsection waived the challenge), *cert. denied*, 532 U.S. 931, 121 S. Ct. 1379, 149 L. Ed. 2d 305 (2001).

mandate on the trial court." Specifically, respondent relies on our decisions in *Hucks*, *State v. Lawrence*, and *State v. Cummings*, in contending that a statute also directs a mandate to a trial court when the enactment implicitly requires the trial court "to supervise the conduct of other state actors."

Accordingly, the State argues that the Court of Appeals erred in concluding that the issue of the violation of N.C.G.S. § 122C-266(a) was automatically preserved because that statute does not expressly direct its mandate at the trial court, and because the mandate involves "a psychiatric examination of a civil-commitment respondent" which the trial court cannot perform. By contrast, respondent argues that the Court of Appeals was correct to conclude that the issue was automatically preserved because the district court, presumably through its role in conducting hearings, is implicitly called upon to supervise state health care facilities when people are involuntarily committed to those facilities.

We conclude that the State's reading of our prior decisions is more consistent with our present view of these cases. Specifically, in *Davis* we concluded that there was a statutory mandate that automatically preserved an issue for appellate review when the statute at issue prohibited the trial court from entering additional sentences against defendant because other judgments entered against him "impose[d] greater punishment for the same conduct." 364 N.C. at 305-06 698 S.E.2d at 70 (citing N.C.G.S. § 20-141.4(b) (2009)). In *Hucks* we concluded that appellate review was automatically preserved for the alleged violation of a statute that "state[d]

simply but unequivocally that an indigent facing a possible death penalty may not be tried unless an assistant counsel has been appointed in a timely manner." 323 N.C. at 579, 374 S.E.2d at 244 (citing N.C.G.S. § 7A-450(b1)). We reasoned that "[t]he statute requires the trial court to appoint assistant counsel as a matter of course when an indigent is to be prosecuted in a capital case. It neither expressly nor impliedly places any responsibility on the defendant to ask for assistant counsel." *Id.* at 579, 374 N.C. at 244. In *Ashe* we concluded appellate review was automatically preserved for the violation of a statute that "require[d] the trial court to summon all jurors into the courtroom before hearing and addressing a jury request to review testimony and to exercise its discretion in denying or granting the request." 314 N.C. at 40, 331 S.E.2d at 659 (citing N.C.G.S. § 15A-1233(a)). Finally, in *Bryant* we concluded that appellate review was automatically preserved for the violation of a statute which stated that "[n]o judge, in giving a charge to the petit jury, either in a civil or a criminal action, shall give an opinion whether a fact is fully or sufficiently proven." 189 N.C. at 114, 126 S.E. at 108 (quoting 1 N.C. Cons. Stat. § 564 (1919)).

In each of these cases we concluded that there was a statutory mandate that automatically preserved an issue for appellate review when the mandate was directed to the trial court either: (1) by requiring a specific act by the trial judge, *Bryant*, 189 N.C. at 114, 126 S.E. at 108; or (2) by requiring specific courtroom proceedings that the trial judge has authority to direct, *see Davis,* 364 N.C. at 301-06, 698 S.E.2d at 67-70; *Hucks*, 323 N.C. at 579, 374 S.E.2d at 244; *Ashe*, 314 N.C. at 40, 331 S.E.2d at

659.

We are not persuaded by respondent's argument that our case law extends the statutory mandate exception in Rule 10(a) of the North Carolina Rules of Appellate Procedure beyond the two instances described above. Specifically, respondent's reliance on our decision in *Hucks* is misplaced because in that case the statute required the trial court to act within its authority to direct courtroom proceedings to appoint an assistant counsel for an indigent defendant in a capital murder trial. 323 N.C. at 579, 374 S.E.2d at 244.

Further, we do not view *State v. Lawrence* as compelling authority here because in that case the statute required the trial court to act within its authority to direct courtroom proceedings to ensure that the State passed a full panel of twelve jurors to the defendant during jury selection. 352 N.C. 1, 12-13 530 S.E.2d 807, 814-15 (2000) (citing N.C.G.S. § 15A-1214(d) (1999), which stated that "[w]hen the prosecutor is satisfied with the 12 in the box, they must then be tendered to the defendant"), *cert. denied*, 531 U.S. 1083, 121 S. Ct. 789, 148 L. Ed. 2d 684 (2001).

Unlike the cases involving the requirement that jurors be selected from the panel at random under N.C.G.S. § 15A-1214(a), our cases, such as *Lawrence*, which concern the requirement that a prosecutor tender a full panel of jurors to the defendant under N.C.G.S. § 15A-1214(d) and (f), have held that a violation of that requirement is automatically preserved for appellate review. *See State v. Garcia*, 358 N.C. 382, 406, 597 S.E.2d 724, 742 (2004) (concluding that appellate review was

automatically preserved when the prosecutor passed less than a full panel of twelve replacement jurors to the defendant during jury selection and thereby violated N.C.G.S. § 15A-1214(f) (2003)), *cert. denied*, 543 U.S. 1156, 125 S. Ct. 1301, 161 L. Ed. 2d 122 (2005); *see also State v. Jaynes*, 353 N.C. 534, 544-45, 549 S.E.2d 179, 189 (2001) (concluding that appellate review was automatically preserved when, in violation of N.C.G.S. § 15A-1214(d) (1999), the defendant was allowed to examine prospective jurors before the State was able to challenge those jurors and to pass a full panel of jurors to the defendant), *cert. denied*, 535 U.S. 934, 122 S. Ct. 1310, 152 L. Ed. 2d 220 (2002); *Lawrence*, 352 N.C. at 13, 530 S.E.2d at 815. We have also held that appellate review is automatically preserved for a violation of N.C.G.S. § 15A-1214(c) which involves the defendant's and prosecutor's right to voir dire jurors. *State v. Jones*, 336 N.C. 490, 496-97, 445 S.E.2d 23, 26 (1994).

Unlike the statutory mandate in N.C.G.S. § 15A-1214(a), the mandates in N.C.G.S. §§ 15A-1214(c) and 15A-1214(d) and (f) directly involve the trial court's responsibility "to exercise its discretion," *id.* at 497, 445 S.E.2d at 27, to see that "[f]airness is promoted by ensuring that the defendant has a full opportunity to face jurors, question them, and challenge unsatisfactory candidates." *Garcia*, 358 N.C. at 407, 597 S.E.2d at 743. By contrast, the responsibility is squarely on either "[t]he State or the defendant," N.C.G.S. 15A-1211(c) (2017), to challenge the empaneling procedure that occurs before jurors are "assigned to the jury box" and "retain [their] seat[s]," *id.* § 15A-1214(a) (2017). As such, appellate review of N.C.G.S. § 15A-

1214(a) is waived when the appellant fails to follow the procedure for challenging a jury panel set out in N.C.G.S. § 15A-1211(c). *Cf. Hucks*, 323 N.C. at 579, 374 S.E.2d at 244 (concluding that appellate review of the issue was automatically preserved, in part, because the statute "neither expressly nor impliedly place[d] any responsibility on the defendant to ask for assistant counsel"); *Ashe*, 314 N.C. at 35, 331 S.E.2d at 657 ("While the statute does not expressly say that the trial judge must have the jurors conducted to the courtroom, we have no doubt that the legislature intended to place this responsibility on the judge presiding at the trial.").

Finally, to the extent respondent relies on *State v. Cummings*, we conclude that *Cummings* is inapposite because the Court there did not even address whether there was a statutory mandate that automatically preserved a statutory violation as an issue for appellate review. 352 N.C. 600, 611-12, 536 S.E.2d 36, 46 (2000) (discussing how a "statutory mandate" found in N.C.G.S. § 148-76 (1999) allowed the prosecution to subpoena defendant's prison records but not addressing whether any alleged violation of the "statutory mandate" was automatically preserved as an issue for appellate review), *cert. denied*, 532 U.S. 997, 121 S. Ct. 1660, 149 L. Ed. 2d 641 (2001).

We hold that a statutory mandate that automatically preserves an issue for appellate review is one that, either: (1) requires a specific act by a trial judge, *see State v. Starr*, 365 N.C. 314, 316-19, 718 S.E.2d 362, 364-66 (2011) (concluding that appellate review was automatically preserved when the trial judge refused to exercise

his discretion to either allow or deny the jury's request to review evidence under N.C.G.S. § 15A-1223(a) (2009)); *Bryant*, 189 N.C. at 114, 126 S.E. at 108; or (2) leaves "no doubt that the legislature intended to place th[e] responsibility on the judge presiding at the trial," *Ashe*, 314 N.C. at 35, 331 S.E.2d at 657, or at specific courtroom proceedings that the trial judge has authority to direct,[10] *id.* at 40, 331 S.E.2d at 659; *see also Davis*, 364 N.C. at 301-06, 698 S.E.2d at 67-70; *Garcia*, 358 N.C. at 406, 597 S.E.2d at 742 (concluding that appellate review was automatically preserved when the prosecutor passed less than a full panel of twelve replacement jurors to the defendant during jury selection and thereby violated N.C.G.S. § 15A-1214(f) (2003)); *Jaynes*, 353 N.C. at 544-45, 549 S.E.2d at 189 (concluding that appellate review was automatically preserved when, in violation of N.C.G.S. § 15A–1214(d) (1999), the defendant was allowed to examine prospective jurors before the State was able to challenge those jurors and to pass a full panel of jurors to the defendant); *Jones*, 336 N.C. at 496-97, 445 S.E.2d at 26 (concluding that appellate review was automatically preserved when the defendant claimed that the trial court's ruling violated his right

---

[10] Consistent with our prior case law, this rule does not treat the North Carolina Rules of Evidence as statutes that contain mandates that automatically preserve issues for appellate review. *See State v. Young*, 368 N.C. 188, 209, 775 S.E.2d 291, 305 (2015) ("The same logic upon which the Court of Appeals relied in reaching a contrary result would necessarily result in treating most of the provisions of the North Carolina Rules of Evidence as 'mandatory,' a result that would be contrary to the manner in which this Court has treated evidentiary arguments that were not supported by an objection lodged at trial for most of its history. As a result, since defendant did not object to the admission of evidence concerning the wrongful death and declaratory judgment complaint and default judgments on the basis of N.C.G.S. § 1-149, he is not entitled to challenge the admission of this evidence as violative of that statutory provision on appeal.").

to voir dire jurors under N.C.G.S. § 15A-1214(c) (1988)); *State v. Buchanan*, 330 N.C. 202, 224-27, 410 S.E.2d 832, 845-47 (1991) (concluding that appellate review was automatically preserved when the trial judge violated N.C.G.S. § 15A-2000(b) (1988) by failing to individually poll the jurors on whether they agreed with the defendant's sentence in a capital case in violation of N.C.G.S. § 15A-2000(b) (1988)); *Hucks*, 323 N.C. at 579, 374 S.E.2d at 244.

Here N.C.G.S. § 122C-266(a) states that "within 24 hours of arrival at a 24-hour facility described in G.S. 122C-252, the respondent shall be examined by a physician." As such, this statute does not require a specific act by a trial judge. Furthermore, the statute does not place any responsibility on a presiding judge. Instead, the provision requires that a physician perform an examination at a designated "state facilit[y]." *Id.* § 122C-252 (2017). Therefore, N.C.G.S. § 122C-266(a) does not fit within either category of statutory mandates that would automatically preserve an issue for appellate review.

As a result, we conclude that this alleged violation of N.C.G.S. § 122C-266(a) is not automatically preserved and that respondent failed to preserve the issue when she did not raise it during the district court hearing on her involuntary commitment. *See* N.C. R. App. P. 10(a)(1). Accordingly, the Court of Appeals' decision in *In re Spencer*, 236 N.C. App. 80, 762 S.E.2d 637 (2014), is overruled to the extent it conflicts with this conclusion.

## III.  Conclusion

Because respondent's issue is not preserved for appellate review, we reverse the decision of the Court of Appeals on that basis.  Moreover, because of our decision, we need not—and do not—reach the issue of whether the Court of Appeals erred in concluding that respondent was automatically entitled to relief without having to demonstrate that she was prejudiced by the violation of N.C.G.S. § 122C-266(a).

REVERSED.

Justice DAVIS did not participate in the consideration or decision of this case.